JENNIE K. HAMILTON, RESPONDENT, v. EDWIN L. PATRICK AND OTHERS, APPELLANTS.

*Specific performance — modification of a contract — admission that the contract as modified was executed — withdrawal of a proposal — effect of a sale of the premises to another person.*

On January fourteenth Jennie K. Hamilton sent to Edwin L. Patrick, by one Truesdell, a proposed contract, signed by her, for the sale to her of lands belonging to said Patrick, which provided that a deed of said lands should be executed by Patrick and wife and be delivered on or before March first, at which date the purchase-price was to be paid. Patrick did not sign the contract underneath the signature of Hamilton, but below it wrote and signed the following: "I sign this contract with the consideration that you agree to build all the line fence on said south line running from said road described above to the shore of Lake George, so that I have no expense."

Hamilton never signed this modification, nor did Truesdell assent to it upon her part. In February. Hamilton's husband wrote to Brown, a surveyor, asking him to survey the land and draw a deed to the vendee, have it executed and hold it in escrow. The surveyor showed the letter to Patrick, who consented to the survey, but also said he would not sell unless Hamilton made the line fence. Patrick and wife executed a deed, and notified Brown and Truesdell before March first that it was ready for delivery. Patrick never tendered the deed or demanded of Hamilton performance of the contract. On April thirtieth Patrick sold the premises to a third party. After May first Hamilton assented to the modification relative to a line fence, and in the same month demanded a deed of the premises. In July she tendered the purchase-money and interest to Patrick.

In an action brought by her for specific performance:

*Held,* that it should not be decreed.

That while it was not necessary for Hamilton to sign the modification made by Patrick to the contract, it was necessary that she should assent to it in some way and communicate such assent to Patrick within a reasonable time, and that she had not done so.

That, inasmuch as Patrick upon the trial expressly objected that the contract was void for want of mutuality, his admission in his answer that he had executed the contract in question could not be taken as an admission of anything more than the execution of the paper. (LEARNED, P. J., dissenting.)

That the letter written by Hamilton's husband to the surveyor, and by him shown to Patrick, was not the act of the plaintiff, and that, in any event, the transaction at that time did not constitute an acceptance of the modification, but showed that certain matters were left in abeyance.

That when Patrick added his modification the whole contract became his proposal, purely voluntary, and requiring an acceptance before it was withdrawn, which the proposer might do at any time.

That said proposal was clearly not to remain open after March first.

That by selling to a third person Patrick decidedly indicated that the proposal was withdrawn; and that as Hamilton did not act until after she had knowledge of such sale their minds did not meet and no contract could result.

APPEALS by the defendants, Sarah G. Tremain and Edwin L. Patrick, from a judgment, dated March 7, 1891, and thereafter entered in the office of the clerk of the county of Warren, decreeing specific performance of a contract for the sale of certain real estate; also from an order of the same date, and entered in the same office, denying a motion for a new trial, after a trial by the court at the Warren Circuit.

*Charles E. Patterson* and *John S. Durand*, for the appellants.

*A. D. Wait*, for the respondent.

LANDON, J.:

We think this judgment must be reversed because no contract was ever completely made between the plaintiff and the defendant Patrick for the purchase and sale of the premises. On the 14th of January, 1885, the plaintiff sent by one Truesdell to the defendant Patrick a writing signed by herself as follows: "I, Edwin L. Patrick, hereby agree to sell and Jennie K. Hamilton agrees to buy for two hundred dollars the following described premises, located in the town of Caldwell, county of Warren and State of New York, viz:" (Here follows a description.)

"A deed of said premises with the usual full covenants of war-

ranty, etc., in which deed the wife of said Edwin L. Patrick shall join, is to be executed and delivered to said Jennie K. Hamilton on or before March 1, 1885, at which date said money shall be paid. This contract is to bind the heirs, executors and administrators of each party.          "JENNIE K. HAMILTON.

"Dated *January* 14, 1885."

The defendant Patrick received the writing, and added thereto at the bottom thereof the following, and signed the same and delivered it to Truesdell for the plaintiff :

"I sign this contract with the consideration that you agree to build all of the line fence on said south line running from said road described above to the shore of Lake George, so that I have no expense.

"E. L. PATRICK."

This additional paper was never signed by the plaintiff. Truesdell sent the paper to the plaintiff. The plaintiff resided in New York, the defendant Patrick at Lake George. The land in question is situate on the west shore of Lake George. Truesdell had acted for the plaintiff in the negotiations with Patrick, but did not assume to give her assent to the modification added by Patrick. The plaintiff did not communicate to Patrick her acceptance of the terms added by him until after May first following. On February 2, 1885, plaintiff's husband wrote a letter to Brown, a surveyor at Lake George, extracts from which are hereafter set forth, enclosing a copy of the alleged contract, requesting him to survey the land, draw a deed of it to plaintiff and have Patrick and his wife execute it, and, if Patrick consented, hold the deed in escrow until he should forward a check. Brown read the letter to Patrick, who told him to make the survey, and also that he would not sell the land unless the plaintiff would make the line fence. Brown made the survey February seventh, drew the deed, omitting reference to the line fence, and handed the deed to Patrick. February eighteenth, Patrick asked Brown if he had received the check and Brown replied he had not. February twenty-fourth, Patrick and wife executed and acknowledged the deed, and Patrick notified both Brown and Truesdell before March first that it was ready for delivery. He retained it and never tendered it to plaintiff or asked

performance. The plaintiff did not demand the deed or tender performance until July following. The parties did not further communicate with each other respecting the matter until after the plaintiff learned that Patrick had sold the premises to the defendant, Mrs. Tremain. Negotiations between Patrick and Mrs. Tremain commenced about March thirteenth, and Patrick delivered the deed to her April 30, 1885. Three days prior to that date the plaintiff, then being at Lake George, at the house of Truesdell, and near to Patrick's house, heard that Patrick had sold the premises to Mrs. Tremain. On May 6, 1885, the plaintiff asked Patrick for the deed of the premises, and in July following tendered him $200, with interest thereon from March 1, 1885, and demanded the deed and Patrick refused.

It was not necessary that the plaintiff should sign the contract, as modified by the addition made to it by Patrick (*Justice* v. *Lang*, 42 N. Y., 493; *McCrea* v. *Purmort*, 16 Wend., 465), but it was necessary that the plaintiff should, in some way, assent to it in its modified form, otherwise there would be no meeting of the minds of the parties; and it was necessary that she should communicate that assent or acceptance to Patrick within a reasonable time, or place the notice of assent or acceptance in the proper way of reaching him within a reasonable time. (*White* v. *Corlies*, 46 N. Y., 467.) The court said in the case cited: "Where an offer is made by one party to another when they are not together, the acceptance of it by that other must be manifested by some appropriate act. \* \* \* But a mental determination, not indicated by speech or put in course of indication by act to the other party, is not an acceptance which will bind the other."

An acceptance not thus communicated to the proposer or his agent does not make a contract. (*Chicago and G. E. R. R. Co.* v. *Dane*, 43 N. Y., 240; Pollock on Contracts, 26; *McIver* v. *Richardson*, 1 M. & S., 557; *Mozley* v. *Tinkler*, 1 C. M. & R., 692; *Russell* v. *Thornton*, 4 H. & N., 788.)

Where the parties are together and the proposal, as written and signed, is delivered and received as a completed contract, the assent thereto of the non-signing party may be inferred from the transaction. Here the plaintiff was in New York and the defendant Patrick at Lake George, and until the plaintiff should communicate

or transmit her acceptance to Patrick there would be no actual meeting of the minds of the parties.

The appeal book recites: "The contract (that is the writing) was put in evidence, its execution being admitted. Marked, Plff. 24." This was an admission of the execution of the paper, but no admission of anything else. Certainly not that its effect was increased or augmented beyond its terms. Practically the same admission was made in the answer of the defendant Patrick, and the same effect should be given to it. The defendant Patrick expressly took the point on the trial that no mutual contract had been made between him and the plaintiff.

The letter written by plaintiff's husband to Brown, the surveyor, and Brown's communication of its contents to Patrick was not the act of the plaintiff. But if it had been, it fell short of an acceptance; it was rather an act showing that acceptance was held in abeyance. The letter stated: "We desire to have included in the piece of land as much of the shore as can fairly and properly be done under the contract, and as many of the trees as can fairly be included within the lines. If there is any vagueness or error in the description, I hope you will confer with Dr. Patrick and have it made right. I drew the description in the contract 'A' without being on the spot, and for that reason it may need correcting." Nothing was said in the letter about the line fence, but Patrick, at the time, told Brown that he would not sell the land, unless plaintiff would build the line fence. Thus the plaintiff's husband clearly intimated his fear that the "contract" was inadequate to secure to him all the land he wanted, and Patrick was still uncertain as to whether his proposition about the line fence was acceptable or would be accepted. One party kept aloof from closing the contract until the survey should prove satisfactory, and the other kept aloof until the line fence should be brought within the agreement. They never by mutual acts came any nearer together.

A proposal may by its terms limit the time for acceptance. Especially is this so in the sale of an option, or where the contract embraces one. In such cases the right of acceptance is a contract right, and the proposal cannot be revoked otherwise than within the terms of the contract. When no limitation is expressed in terms in cases where the right of acceptance is a contract right, the rule

is that the acceptance must be made within a reasonable time, and what is a reasonable time depends upon the circumstances. (*Fitzpatrick* v. *Woodruff*, 96 N. Y., 561 ; *Wooster* v. *Sage*, 67 id., 67.)

When Patrick made the addition to the plaintiff's proposal the whole paper became Patrick's proposal. It was not founded upon any consideration. Patrick proposed in anticipation of receiving an acceptance, not in consideration of any present promise or benefit. His proposal, therefore, vested no contract right in the plaintiff. The only right she had was to accept the proposal while it was open. As it was a purely voluntary proposal, Patrick could withdraw it at his pleasure. It is plain that he kept it open until the first day of March had passed. It is not clear that he kept it open any longer. The proposal itself implies the necessity of acceptance on or before that day. It is therein proposed that the deed should be executed and delivered to the plaintiff "on or before March 1, 1885, at which date said money shall be paid." Acceptance must precede any obligation to perform, and, of necessity, must be made so as to admit of performance as proposed. Any subsequent acceptance would imply a contract different from the terms proposed. Such a change cannot be unilateral, but must be mutual. Patrick could not be forced by the plaintiff to make any change, however slight. Parties may be as unreasonable as they please about entering into a contract. The equitable rules which the court sometimes resort to in construing a contract, after it is made, cannot be resorted to to compel a party to adhere to his voluntary proposal to make one. A proposal may be revoked at any time before acceptance. (*Quick* v. *Wheeler*, 78 N. Y., 300.) It is plain that an offer to sell, made without consideration, is a *nudum pactum*, and, therefore, the proposer may change his mind; if the other party accepts after such change, their two minds do not meet, and hence no contract is made. It will not, however, be presumed that he has changed his mind within the time obviously allowed for acceptance, unless he does some act indicating such change. Suppose that, notwithstanding March first had passed, Patrick still kept the proposal open for a time ; on the thirtieth of April he conveyed the land to the defendant, Mrs. Tremain ; he thereby indicated in the most decisive manner that he had finally changed his mind. The plaintiff had meantime done nothing to raise any equities in her favor. She learned the fact of this con-

veyance, and afterwards gave Patrick notice of her acceptance. She then knew that the proposal to her was withdrawn; that their minds could not meet; that no contract could be made. In *Dickinson* v. *Dodds* (2 Ch. Div., 463 [16 Moak, 864]) it was held that an offer to sell property may be withdrawn before acceptance without any formal notice to the person to whom the offer is made; that it is sufficient if that person has actual knowledge that the person who made the offer has done some act inconsistent with its continuance, such as selling the property to a third person. The court adopts the line of reasoning which we have set forth. It seems to be conclusive.

The learned trial judge was of opinion that the tender of performance by the plaintiff in July, and the subsequent commencement of this action, constituted such an adoption by the plaintiff of the proposal as rendered the remedies between the parties mutual. This would, no doubt, be true as between Patrick and the plaintiff, if Patrick had elected so to treat it. But he did not so elect. Such an acceptance was too late to bind him against his will; and even if he had elected to be bound, it was too late for him to change his position with respect to his grantee, the defendant, Mrs. Tremain, so as to impair the title he rightfully conveyed to her.

The defendant, Mrs. Tremain, urges further grounds for reversal based in part upon facts touching the good faith of her purchase from Patrick. As the judgment must be reversed for the reasons above considered, we do not deem it needful to set forth such facts or prolong this discussion.

The judgment should be reversed, new trial granted, costs of this appeal to abide event.

MAYHAM, J. :

I do not think the answer in this case was such an admission of the terms of the contract, as alleged in the complaint, as to justify the plaintiff's recovery upon the pleadings alone. The proof at the trial fails to show that the minds of the parties met upon the proposition as to building the fence imposed by the defendant as a condition of signing the proposed contract.

LEARNED, P. J. (dissenting) :

The complaint alleges that, by a writing dated January 14, 1885, signed by plaintiff and defendant, Edwin L. Patrick, the said

defendant contracted to sell a certain lot of land to plaintiff for a certain price, and that a copy of the agreement is annexed, marked "A." That subsequently she caused the land to be surveyed and a description made; and that the same was submitted to Patrick and approved by him, and that it was agreed that the land should be conveyed by that description.

The answer of defendant Patrick admits that at the time of the execution of the agreement referred to in the complaint he owned the land, that the agreement referred to in the complaint was signed by himself and plaintiff and was similar to Schedule A, but he cannot state whether said copy is an exact copy of the agreement or not. He avers that by the terms of the agreement the purchase-price was to be paid on delivery of the deed. He admits the making of the survey and the description, and avers that he and his wife did, on or before March 1, 1885, execute and tender to plaintiff a deed substantially according to said description.

He avers that on and for a long time prior to the 1st of March, 1885, and at all times, he was ready and willing and able to perform said agreement with plaintiff until plaintiff failed and refused to perform it on her part, and that she failed to perform it on her part for many weeks after March 1, 1885.

On the trial the original contract was put in evidence and its execution admitted. It agrees with Schedule A attached to the complaint.

Now, upon these pleadings, I do not see how it can be in the power of Patrick to claim that a valid written contract was not made. His defense rests on his readiness to perform, and the refusal of plaintiff to perform on her part.

It is true that the contract consists of an agreement in an ordinary form for Patrick to sell and plaintiff to buy the land at a certain price. This is signed by plaintiff. Below it is the following: " I sign this contract with the consideration that you agree to build all of the line fence," etc. At the foot is the signature of Patrick.

The plaintiff alleges that she made this contract, giving a copy of the whole, including the clause underneath her signature. Patrick admits the making of the contract, although he cannot say whether the schedule is a correct copy. The original is proved to

have been executed, and corresponds with Schedule A. Patrick's answer is an admission that the written contract was executed. He evidently includes in that admission the paragraph between plaintiff's signature and his own. So that we have the statement of both the parties that this contract (probably including that paragraph), was their written agreement. I think it is not open for Patrick, on these pleadings, to show that no contract was made. That was not a matter in issue between the parties. Patrick admitted the contract; averred that he had made and tendered a deed in compliance therewith, and that plaintiff had refused to perform. Whether or not he could have successfully denied the execution of the contract by both parties, certainly he did not. And it is not in his power at this time to say that the evidence failed to prove a contract. It is not necessary, therefore, to consider whether the circumstances testified to on the trial established a binding agreement between the parties. The defense of defendant Patrick, as set forth in his answer, is the failure of plaintiff to perform a contract which he says he was willing and offered to perform.

If, then, this written contract was binding, its terms were that Patrick and his wife were to execute and deliver the deed to plaintiff on or before March 1, 1885, at which date the money was to be paid. The defendant Patrick and his wife executed the deed about February twenty-fourth. No doubt existed in their minds at that time that Patrick had contracted, in writing, to sell the land to plaintiff. And he supposed that, unless plaintiff paid him the money by March first, the contract was at an end, and he might make a better bargain if he could. It is evident from the letter of Patrick that, in his view of plaintiff's right's, she "slept on her privilege," and, by neglecting to tender him the $200 on or before March first, lost all claim to the land. In that belief, he proceeded subsequently to sell it to Mrs. Tremain, one of the defendants.

The delivery of the deed and the payment of the money were to be cotemporaneous. If either party, therefore, would put the other in default, he must tender performance and demand performance from the other. Time is not generally regarded in equity as of the essence of the contract. (*Duffy* v. *O'Donavan*, 46 N. Y., 223; *Hubbell* v. *Von Schoening*, 49 id., 326; *Edgerton* v. *Peckham*, 11 Paige, 352.)

From the time of making the contract equity regards the vendee as the owner of the property and the vendor as a creditor for the purchase-money, with security therefor on the land. (*Lewis* v. *Smith*, 9 N. Y., 502.) Hence it comes that as the vendor is treated as, equitably, a mortgagee, the vendee is not to lose his equitably mortgaged land by mere non-payment of the debt at the law day. The rules on this point are well settled in *Webb* v. *Hughes* (L. R., 10 Eq., 281), where it is said : "A purchaser may, by the terms of the agreement, make time the essence of the contract. But it requires a very strict stipulation to effect that object." (3 Pomeroy's Equity, § 1408 ; 2 Story's Equity, § 776.)

Now, it appears, from the testimony of. defendant Patrick that he heard that plaintiff and her husband were sick ; then that they were getting better ; and it came so near the first of March that he felt anxious about the money. He did not, however, write to plaintiff, who was then in New York, nor did he tender, or cause to be tendered, to her the deed. His daughter, about the twenty-fifth of April, told him that plaintiff considered the contract good, and that she, the daughter, was afraid he would have trouble. He said he would risk all trouble. And on the thirtieth of April he conveyed the land in question to defendant, Mrs. Tremain. It is evident, then, that defendant Patrick put himself on the ground then, as he did in his answer in this case, that because plaintiff had not tendered him the money on or before March first he was free from all obligation to her. I do not think this was correct. At the very time when he delivered the deed to Mrs. Tremain the plaintiff was staying at the next house to him. He might have tendered plaintiff the deed and demanded the money without any difficulty.

I think that the finding of the court, that defendants, Mr. and Mrs. Tremain, had notice of plaintiff's contract with Patrick before the deed was delivered to Mrs. Tremain, is sustained by the evidence. Mrs. Tremain drew up the deed to herself from the dictation of Patrick. He read from the deed which he had executed to plaintiff and told her what that deed was. She said she was astonished, and that if plaintiff had any rights she, Mrs. Tremain, would have nothing to do with it. Patrick said plaintiff had none, and Mrs. Tremain said she would take his word for it. A letter of Patrick to Mrs. Tremain, of March twelfth, refers to the contract.

It is not necessary to repeat the other testimony tending to show either actual notice or facts sufficient to put Mr. and Mrs. Tremain upon inquiry. They did not inquire of the persons who could have told them, their near neighbors and old friends, plaintiff and her husband. (*Reed* v. *Gannon*, 50 N. Y., 349.)

In my opinion the judgment of the court below was right and should be affirmed, with costs.

Judgment reversed, new trial granted, costs to abide event.