MOSES M. SAGER, as Treasurer of the Lime Street Elgin
Creamery Company, Plaintiff, *v.* EDWIN N. GONNER-
MANN, Defendant.

(County Court, Greene County, May, 1906.)

Contracts: Interpretation of contract — Conditions precedent — Per-
formance; Actions on contracts — Conditions precedent in general.
Offer and acceptance — Extinguishment of offer and acceptance — Revo-
cation of offer.

> The principle that, where a contract is upon a condition pre-
cedent which is capable of being performed, strict performance must
be shown to entitle the party upon whom the condition is imposed
to recover thereon is applicable to a subscription agreement.
>
> A subscription by which plaintiffs are to asume the whole burden
of building and equipping a butter factory after obtaining a certain
number of subscribers as agreed, such subscribers not to be bound
by their subscriptions unless, within ninety days from the date of
the instrument, subscribers representing two hundred cows are ob-
tained, is a mere offer or proposition not binding upon the sub-
scribers until the propositions made by plaintiffs have been carried
out and the conditions fulfilled.
>
> Before plaintiffs had signed said agreement or the requisite num-
ber of subscribers had been obtained, plaintiffs, notwithstanding

defendant's request, neglected and refused to take his name from the list of subscribers and he, thereafter, refused to take any part under the agreement and disclaimed all liability thereunder. In an action to recover assessments alleged to be defendant's proportionate share of the expense of running the enterprise, held;

The true intent and meaning of the agreement was that the subscribers who were to represent two hundred cows should either furnish the number of cows set opposite their names or, in case they were not owners of cows, should be financially able to pay their just proportion of the burden imposed by the agreement and, as a condition precedent to any liability upon the part of the defendant, it was incumbent upon the plaintiffs to allege and prove that they had performed the agreement upon their part. The fact that defendant signed the subscription in ignorance of the fact that two prior subscribers were insolvent and owned no cows, although the numbers set opposite their names aggregated twenty-one, was not a waiver of the provisions as to the financial responsibility of said subscribers and his mere signature could not charge him with knowledge thereof.

Evidence that of the twenty-four subscribers three, not shown to be financially responsible, signed for cows aggregating twenty-two, without proof that any of the others signed or wrote opposite their names any number representing cows, or that they consented to become liable for any definite number of cows, and in the absence of proof as to who put the numbers aggregating two hundred twelve on the agreement, or when such numbers were written, is insufficient proof that the subscribers represented the numbers set opposite their respective names.

Defendant's rescission of his subscription was complete and effectual and, the proof showing not only failure of performance on the part of the plaintiff, but that the conditions precedent to the liability of the defendant were not performed, defendant was entitled to judgment dismissing the complaint on the merits with costs.

THIS action was brought against the defendant to recover assessments under a written agreement signed by the defendant and others. The agreement consisted of two parts, called Exhibit "A" and Exhibit "B." Burnap & Burnap, the parties of the first part, agreed to build and equip a butter factory under the specifications contained in Exhibit "A" for $4,350, payable in cash when the building was completed. The building was to be erected in ninety days or thereabouts after subscribers representing 200 cows had been obtained and a location granted. The subscribers to

Exhibit "B" agreed with Burnap & Burnap and with each other, for the purpose of erecting and equipping a butter factory, that, as soon as subscribers representing 200 cows were obtained by the first parties, said second parties would select from their number, by ballot, an executive committee of three, and that a majority of said committee should have full power to act for each of them until the completion of the plant in accordance with the specifications contained in Exhibit "A," and that the acts of said committee should be of binding force and effect as soon as subscribers representing 200 cows were obtained. It was further provided that the said parties of the first part should procure subscribers representing 200 cows within ninety days from the date of the agreement and, if they should fail so to do, the said parties of the second part should be relieved from all obligations and liabilities thereunder. It was further agreed by the second parties that the trustees should negotiate a loan of money sufficient in amount to pay $4,350 and give the obligation of the Lime Street Elgin Creamery Company for the money so borrowed. Said obligation should be payable in five equal annual payments, with annual interest, and for the purpose of meeting the annual payment of principal and interest the trustees should make an assessment on each of the subscribers proportionate to the number of cows subscribed by them, the amount of said annual assessment to be deducted from the amount due each subscriber for milk.

· Twenty-four persons subscribed said agreement. Opposite the names of the subscribers appear numbers aggregating 212. After the defendant had signed the agreement and before subscribers were procured representing 200 cows and before said first parties had signed said agreement, the defendant requested the parties of the first part, through their agent who had procured his signature to the agreement, to take his name from the list of subscribers. The parties of the first part neglected and refused so to do, and thereafter the defendant refused to take any part under said agreement and insisted that there was no liability on his part by reason of signing the same. Several assessments were

made against the defendant for what was claimed to be his proportionate part of the expense of running the butter factory and of interest on the note given for the erection and equipping of said butter factory. This action was brought to recover such assessments.

E. A. Gifford (Cady & De Lamater, of counsel), for plaintiff.

Osborn, Bloodgood & Wilbur, for defendant.

TALLMADGE, J. In order to create a liability against the defendant, it was necessary for the parties of the first part to procure subscribers representing 200 cows within ninety days from the date of the agreement. This was a condition precedent to liability on the part of a subscriber, and it was necessary for the plaintiff to prove, not only nonperformance on the part of the defendant, but a full performance on the part of the parties of the first part to the agreement. The plaintiff introduced in evidence the agreement and proved that it was signed by the parties whose names appear thereon and that the names were obtained within ninety days from the date of the agreement. It appears from the testimony that three of such subscribers signed for cows, aggregating twenty-two, but it does not appear that any of the other subscribers signed or wrote opposite their names any number representing cows, or that they in any manner consented to become liable for any definite number of cows. The only light on the subject is that Exhibit "B," introduced in evidence, contains opposite each name certain numbers aggregating 212. Who put the numbers on the agreement or when such numbers were written does not appear. This does not prove that the subscribers represented the numbers set opposite their respective names.

Again, the true intent and meaning of the agreement was that the subscribers who were to represent 200 cows should be responsible men — men financially able to bear their just proportion of the burden imposed by the agreement. They must furnish the number of cows set opposite their names,

or be financially able to pay their proportionate part of the expenses in case they were not owners of cows. In other words, if they did not own the cows, they must represent, at least, the equivalent in financial responsibility; so that, when assessments were made upon them as provided by the agreement, they would be in a condition to meet and liable to pay such assessments. Any other construction of the agreement would be manifestly unfair to those who were financially responsible. The signing of the agreement and the performance of the conditions therein contained meant the building and equipping of a creamery at an expense of $4,350, and that at least 200 cows should be subscribed, and that each subscriber should pay in proportion to the number of cows set opposite his name, and that he was financially able to do so. If any other meaning is given to such an agreement, then, if two men financially responsible subscribed their names and set opposite thereto twenty cows each, and the other subscribers, opposite whose names appear the balance of the cows to make up the 200, were not the owners of any cows and were not responsible financially, the two would be obliged to bear the whole burden. Such a construction would be a fraud upon their rights. It would not be fair to hold that in such a case subscribers representing 200 cows had been obtained, because it would not result in an equal burden upon the subscribers.

The doctrine as to the interpretation of written agreements is elementary and is born of the familiar principle, of daily application in courts of justice, that all contracts must be so interpreted as to carry out the intent of the contracting parties. Smith v. Kerr, 108 N. Y. 37.

If there is any uncertainty in the meaning of this agreement, then the rule laid down in the case of Russell v. Allerton, 108 N. Y. 288, should be invoked that, "Where there is uncertainty or doubt as to the meaning of words or phrases used in a contract, in seeking for the intent of the parties as evidenced by the words used, the fact that a construction contended for would make the contract unreasonable and place one of the parties entirely at the mercy of the other, may properly be taken into consideration."

In New York Exchange Co. v. De Wolf, 31 N. Y. 281, Davies, J., writing the opinion, says: "The essence of every agreement of this kind is, that there should be perfect equality among the subscribers as to the nature and extent of their respective liabilities for the several sums subscribed by them respectively." He further states that, if any subscriptions were obtained on different terms, then a fraud was practiced and rendered the engagement of the subscribers void.

Every party to such agreement has the right to insist upon the exercise of good faith and, when any other interpretation would mean a fraud upon the rights of some, the courts should put such a construction upon the language as to compel good faith and protection to all parties. Dick, the agent of the parties of the first part, understood that the agreement meant that the subscribers should be responsible men, as he himself testified that he said to the defendant that he expected to get and would get responsible men to sign the agreement.

Under the construction which I have given to the agreement, it was necessary that the parties of the first part obtain subscribers financially responsible, or owning cows, to actually represent the 200 cows which the agreement provided for. This was a condition precedent to any liability on the part of the defendant; and it was incumbent on the plaintiff to prove that all such conditions had been fulfilled on the part of the parties of the first part before the defendant could be made liable.

In pleading the performance of a condition precedent in a contract, it is not necessary to state the facts constituting performance, but the party may state, generally, that he, or the person whom he represents, duly performed all the conditions on his part. If that allegation is controverted, he must, on the trial, establish performance. Code Civ. Pro., § 533.

The defendant by his answer controverted such performance, and the plaintiff failed to prove such condition precedent.

It does not appear from the testimony that those who

signed the agreement were financially responsible or the owners of cows aggregating two hundred, or that they even placed opposite their names the numbers of cows which they were to represent, excepting in three instances. This rule is recognized by the courts, and is strictly enforced. Where a contract is upon a condition precedent which is capable of being performed, a strict performance must be shown to entitle the party upon whom the condition is imposed to recover thereon. Oakley v. Morton, 11 N. Y. 25; Bogardus v. New York Life Ins. Co., 101 id. 328; Weeks v. O'Brien, 141 id. 199–202.

In Presbyterian Church v. Cooper, 45 Hun, 453, the action was based upon a subscription. The court say: "The subscription was 'upon the express condition, and not otherwise, that the sum of $45,000 in the aggregate shall be subscribed or paid in for the purpose hereinafter stated, and if within one year from the date, said sum shall not be subscribed or paid in for that purpose, then this agreement to be null and of no effect.' Held, that valid subscriptions or actual payments to the amount of $45,000 were contemplated as the condition precedent to absolute liability." This case was affirmed in 112 N. Y. 517.

The plaintiff not only failed to prove performance on the part of the parties of the first part, but the testimony shows that the conditions precedent to the liability of the defendant were not performed. It appears from the testimony that four of the subscribers to the agreement were insolvent and were not the owners of cows. The number of cows set opposite their names aggregated thirty-six. Two of the names of those who were insolvent were upon the subscription paper at the time the defendant subscribed the same, but there is no testimony showing that the defendant knew of the financial condition or insolvency of these two subscribers. I am of the opinion, therefore, that he did not waive the provision as to the responsibility of subscribers in reference to those who had already subscribed; he could not be charged with knowledge from the mere fact that he signed the paper subsequently to their signing the same. After he signed the paper, Lacy and Van Loan, opposite

whose names were fifteen cows, subscribed their names, both of whom were insolvent, which left subscribers representing two hundred cows still below the requisite number. The agent of Burnap & Burnap who procured the subscribers represented to the defendant that only responsible men would be obtained. The defendant says that this agent stated to him that only men owning farms were to be taken. Whichever statement was made, it is apparent that the agent understood that the agreement meant that the subscribers must be financially responsible, or he was attempting to deceive the defendant. The defendant had the right to believe what Dick said in this respect and was not required to verify his statement by reading the agreement or otherwise. Wilcox v. American Tel. & Tel. Co., 176 N. Y. 115.

Good faith should be exercised and called for in every transaction; and, in a paper of this character, the law writes good faith for the protection of each subscriber. Industrial & General Trust v. Tod, 180 N. Y. 215.

It also appears from the testimony that the defendant rescinded and withdrew his subscription before the requisite number of subscribers had been obtained and before Burnap & Burnap had executed the agreement on their part or become bound by it. This paper was in the nature of a proposition by which the defendant was to be bound, after certain conditions had been performed; and, unless it appeared that at the time the subscription was obtained the defendant said or did something to induce the parties of the first part to perform services or incur expenses at his request, there would be no binding force to the agreement, until the conditions that were to be performed by the parties of the first part were fully performed and the agreement was signed by said first parties. Burnap & Burnap took upon themselves the whole burden; they proposed to build a butter factory, after subscribers representing two hundred cows had been obtained; they were to obtain the subscribers, who were not to be bound by their subscriptions unless, within ninety days from the date of the paper, subscribers representing at least two hundred cows were obtained. There was no mutual promise or obligation in the scheme of creating a liability

and, therefore, no binding force to the subscriptions until the propositions had been carried out and the conditions fulfilled. There was no promise or mutual obligation at the inception of the arrangement. The parties were not to be bound until the happening of a certain event. Burnap & Burnap could proceed with the matter of obtaining subscriptions until subscribers representing nearly the whole number were obtained and incur no liability to the subscribers, nor be obliged to perform any other act, at least, until the balance of the subscribers were obtained and the agreement was signed by them. The agreement, during the time of procuring the subscribers, was not binding as it was based upon no consideration. Burnap & Burnap parted with nothing at the request of the defendant and there was no mutuality; there was not the consideration which mutual promises give a contract, hence this paper can be treated only as a written offer or proposition. Quick v. Wheeler, 78 N. Y. 300.

The subscriptions of several furnished no consideration for the promise of any one. Twenty-third St. Bap. Ch. v. Cornell, 117 N. Y. 604.

The doctrine that a party may withdraw a proposition to enter into any obligation or relation before it has been accepted by the other party is decisive upon the facts here presented. Bert v. Farrar, 24 Barb. 518; Quick v. Wheeler, 78 N. Y. 300; Hamilton v. Patrick, 62 Hun, 74; Twenty-third St. Bap. Ch. v. Cornell, 117 N. Y. 601.

There is no direct testimony showing that names of subscribers were obtained or any act done by Burnap & Burnap at the request of the defendant; and, as the mere signing of a subscription, conditioned upon the securing of a stated amount, does not constitute an express or implied request that the party to be benefited by the subscription procure other subscribers, the rescission by the defendant was complete and effectual. 117 N. Y. 601.

I am, therefore, of the opinion that the plaintiff is not entitled to recover and that the defendant is entitled to a judgment dismissing the complaint, on the merits, with costs.

Ordered accordingly.