JOHN B. SMITH, Appellant, *v.* ABRAM T. KERR, Respondent.

Where a building upon leasehold premises is destroyed by fire, no obliga-
tion rests upon either the landlord or tenant to rebuild, in the absence of
covenants in the lease requiring it.

In such case, under the statute (Chap. 345 Laws of 1860), the tenant has an
option either to declare the lease at an end and to surrender possession
of the premises, or to continue in possession until the expiration of his
term, paying the rent reserved in his lease.

Unless the tenant, in the exercise of his option, effects a full and absolute
surrender, he continues liable for rent under the lease.

In the absence of a covenant to rebuild, the landlord has no right to enter
upon the demised premises and take possession, to the exclusion of the
tenant, for the purpose of rebuilding.

If the tenant, however, makes no objection, it will be deemed a license
from him to the landlord to re-enter for the purpose of rebuilding, and
when the new structure is completed the tenant has the right to enter
into possession thereof and retain it for the term.

A new agreement between landlord and tenant will not operate as a sur-
render of an unexpired term unless by the creation of a new term incon-
sistent with the existing lease, an intent to surrender can be clearly
implied from the new agreement.

Defendant leased of plaintiff certain premises in the village of S. for a
term of three years. On one end of the lot was a wooden building
occupied by defendant as a store. During the first year of the lease the
store was destroyed by fire. Plaintiff erected in place of the building
destroyed a much larger and more expensive building of brick. Defend-
ant immediately after the fire erected a shanty on the lot and continued
to occupy it as a store until the new store was completed, in which he
thereafter continued his business; he promised orally to pay an increased
rental. In summary proceedings to remove defendant because of non-pay-
ment of such additional rent *held,* that the new agreement did not operate
as a surrender of the old term; that if it could in any way be held to have
been intended to effect a new lease it was for the unexpired term, and as
such a term could not be created by parol (2 R. S. 135, § 8,) there was
no new lease and so no surrender of the old lease by operation of law;
that said new agreement was simply an executory one, without consid-
eration, to alter the terms of an existing unexpired lease where no
breach had occurred, and so it was void; that, therefore, the old lease
remained in force and plaintiff was not entitled to judgment.

It was claimed that, as part of the parol agreement, the landlord surrendered
his claim for rent during the time the new building was being erected,
and that this furnished a good consideration for the new agreement.
*Held* untenable; that as the rent was payable under defendant's covenant

a parol unexecuted agreement to discharge the claim was inoperative and void.

By the parol agreement the tenant was allowed to put fixtures into the new building and apply the cost thereof in payment of rent. *Held*, that this furnished no consideration.

(Argued December 6, 1887; decided January 17, 1888.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made October 31, 1884, which reversed a judgment of the County Court of Cattaraugus county affirming a judgment of a justice of the peace in favor of plaintiff as landlord in summary proceedings to remove defendant for alleged nonpayment of rent. (Reported below, 33 Hun, 567.)

The facts appear sufficiently in the opinion.

*Wm. H. Henderson* for appellant. The verbal agreement of the tenant to pay $50 a month rent in lieu of the rent of $25 a month reserved in the lease, is a valid agreement, having been made upon the consideration of the landlord's agreement to build a brick store upon the demised premises and other considerations. (*Hogan* v. *Krumwiede*, 25 Hun, 116; *Coe* v. *Hobby*, 72 N. Y. 141; *Nicoll* v. *Burke*, 78 id. 580; *Blumenthal* v. *Bloomingdale*, 100 id. 558; *Vandekar* v. *Reeves*, 40 Hun, 430; *Beall* v. *White*, 94 U. S. R. 389; Taylor's Landl. and Ten. [6th ed.] 392; Woodfall's Landl. and Ten. [9th ed.] 267; *Smith* v. *Niver*, 2 Barb. 180; *Schieffelin* v. *Carpenter*, 15 Wend. 400; McAdam on Landl. and Ten. 432.) The total destruction of the buildings on the demised premises by fire after the commencement of the term in and of itself terminated the lease unless the tenant elected, notwithstanding such total destruction, to retain possession under the lease. (Laws of 1860, Chap. 345; McAdam on Landl. and Ten., §§ 218, 219; *Johnson* v. *Oppenheimer*, 55 N. Y. 280.) The total destruction of the buildings on the demised premises, and the subsequent election of the tenant not to remain in possession under his lease having terminated the written lease, the verbal lease and the taking possession under it was effectual

and valid as a lease from month to month or from year to year. (*Schuyler* v. *Leggett*, 2 Cow. 660; *Reeder* v. *Sayre*, 70 N. Y. 180; *Laughran* v. *Smith*, 75 id. 205.)

*Hudson Ansley* for respondent. The canceling and destroying of the lease by the agreement of the parties will not operate to divest the interest of the lessee. (*Rowan* v. *Lyttle*, 11 Wend. 616; 2 R. S. 134, § 6; id. 135, § 8.) A part of the term, that is the future part if more than a year, cannot be surrendered by parol. (*Smith* v. *Devlin*, 23 N. Y. 363; *Smith* v. *Niver*, 2 Barb. 180; *Wilson* v. *Lester*, 64 id. 431–434; *Pierrepont* v. *Barnard*, 6 N. Y. 295; *Denny* v. *Parker*, 52 id. 494.) The lease under which the respondent occupied, being a sealed instrument and as at the time of the alleged agreement, nearly three years of its unexpired term remained, there having been no breach, it could not be substantially modified by parol. (*Coe* v. *Hubby*, 72 N. Y. 141; *Allen* v. *Jaquish*, 21 Wend. 628; *Clough* v. *Murray*, 3 Robt. 7–16; *Kuyhn* v. *Stevens*, 7 id. 544; *S. C.*, 36 How. 275; *Ducher* v. *Rapp*, 9 J. & S. 236; *Dodge* v. *Crandall*, 30 N. Y. 306, 307; *Smith* v. *Kerr*, 33 Hun, 567.)

RUGER, Ch. J. On the 5th day of September, 1880, the defendant was in occupation of certain premises in the village of Salamanca under a written lease from the plaintiff to him dated February 20, 1880, describing such premises by metes and bounds, and the building thereon, for a term of three years at an annual rent of $300. The premises consisted of a plot of ground extending thirty-five feet front and rear, and twelve rods long, upon which was erected a wooden building intended to be used for mercantile purposes. On that day the building was destroyed by fire and thereafter, within four months, the landlord rebuilt upon the same premises a much enlarged building of brick at an expense considerably in excess of the cost of the original structure. Immediately after the fire the defendant erected a shanty upon the

same premises and continued to occupy it as a drug store until about Christmas, 1880, when he removed his goods into, and took possession of the brick structure. This proceeding was commenced by the plaintiff to remove the defendant from the premises by summary proceedings, upon the ground of a failure to pay the rent due August 1, 1881, under a parol contract for an increase of rent alleged to have been made about the 1st of December, 1880. The defense interposed was, first, a denial that any such agreement was made; second, that if there-had been it was void by the statute of frauds, and ineffectual as a surrender of the existing lease.

Upon the destruction by fire of a structure occupied by a tenant no obligation rests upon either the landlord or the tenant to rebuild it in the absence of covenants in the lease requiring it to be done. (*Doupe* v. *Genin*, 45 N. Y. 119.) The tenant is, however, at common law liable to pay the rent reserved by the lease so long as any part of the demised premises remains in existence capable of being occupied or enjoyed by such tenant. Under the statute, however, in case of the destruction of such buildings, the tenant is entitled to exercise an option, either to declare the lease at an end and to quit and surrender possession of the premises, or to continue in the possession thereof until the expiration of his term paying the rent reserved by his lease. (Chap. 345, Laws of 1860.) The mere fact of the destruction of the buildings does not terminate the lease, and the tenant, unless he exercises this option and effects a full and absolute surrender of the premises, continues liable under the covenants of his lease for the payment of rent. (*Johnson* v. *Oppenheimer*, 55 N. Y. 280.) The tenant has the right to build on the premises and occupy such building for the remainder of the term, if he chooses to do so under the conditions of his original lease, or if the landlord voluntarily elects to rebuild, the tenant has the right to enter into possession of such new building and retain it for the term. It is quite clear that, in the absence of a covenant to rebuild, the landlord has no right to enter upon the demised premises and take possession to the

exclusion of the tenant for the purpose of erecting a new structure, but if the tenant makes no objection to such a proceeding, it would be deemed a license from him to the landlord to enter for the purpose of rebuilding. (Wood's Landl. and Ten. 915.)

In the case at bar the tenant did not elect to surrender his lease, and the landlord, with the apparent consent of the tenant, proceeded immediately to make arrangements to rebuild on the premises. Frequent communications between the landlord and tenant occurred during the erection of the building from which the consent of the tenant to such a proceeding must be inferred, and indeed he had charge of the work until the foundation walls were laid, and superintended their construction. The landlord at first contemplated erecting a structure substantially of the same material and dimensions as the original building, and had proceeded to some considerable extent in the execution of that project when his design was arrested by the passage of a village ordinance, forbidding the erection of a wooden building in that place. His plans were then changed and he concluded to build of brick, enlarging the size of the building, and as early as the middle of September had contracted with a builder to perform the work. During the course of the erection, but at what precise time does not appear, he announced to the tenant an intention to increase the rent, but stated that until he knew how much it would cost he could not tell how much more he should charge. To this the defendant replied that he expected to pay more. The rebuilding then continued until it was nearly completed when the conversation occurred which the plaintiff claims constituted a new lease for the occupation of the premises and a surrender of the previous term. Although the plaintiff's testimony as to the contract was controverted by the defendant's witnesses, yet, as the justice rendered judgment in favor of the plaintiff, we are bound to assume upon this appeal that the trial court found in favor of the plaintiff's version of the transaction.

Nothing was said in that conversation about the making of a new lease or the surrender of the old one, but an agreement

is sought to be implied from the fact that the defendant agreed to pay an increased rent. As stated by the plaintiff the conversation was as follows: " Arnold (defendant's agent) called me to him and asked me what I was going to charge him for rent of the building; I told him it would be worth $800 a year, but I would not charge him that, that he could have it for fifty dollars per month; he said he thought it was pretty high; I told him it was as cheap as the old building considering the rooms above, insurance, etc.,    *    *    *    he wanted to rent the brick new store building; I told him I should not charge him rent from the time of the fire until he took possession of the new building; he asked me what I would allow him for putting in the store fixtures, counters, shelves, drawers, etc.; I told him he could put them in to suit himself, and I would allow him $250 as rent on this agreement; he said he would keep a correct account of the expenses and if it did not cost $250 I need not allow any more than it cost." It was shown that subsequent to this conversation, the defendant took possession of the newly erected buildings and continued to occupy them as a drug store. It is provided by statute that " no estate or interest in lands, other than leases for a term not exceeding one year    *    *    *    shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning surrendering or declaring the same." (3 R. S. [7th ed.] § 6, p. 2326.)

It is, therefore, quite clear that the new agreement could not operate as a surrender of the old term unless by the creation of a new term inconsistent with the existing lease, an intent to do so can be clearly implied. It was said by Allen, J., in *Coe* v. *Hobby* (72 N. Y. 145): " A surrender is implied and so effected by operation of law within the statute quoted, when another estate is created by the reversioner or remainderman, with the assent of the termor, incompatible with the existing estate or term. In the case of a term for years, or for life, it may be by the acceptance by the lessee or

termor, of an estate incompatible with the term or by the taking of a new lease by a lessee. It will not be implied against the intent of the parties as manifested by their acts; and when such intention cannot be presumed without doing violence to common sense, the presumption will not be supported.   *   *   *   The farthest that our courts have gone, is to hold that to effect a surrender of an existing lease by operation of law, there must be a new lease, valid in law, to pass an interest according to the contract and intention of the parties."

In the construction of contracts it is the duty of the court to put itself, as near as may be, in the situation of the parties and from a consideration of the surrounding circumstances and the occasion and apparent object of the parties, determine therefrom the meaning and intent of the language employed in framing their agreement. At the time of this conversation the defendant had a valid lease of the premises for an unexpired term of about two years and a half, which by his continued occupation of the premises with a temporary structure, and his frequent conversations with the plaintiff, indicating an intention to continue in possession after a new building should be erected, repel any inference that by the new arrangement he supposed he was surrendering any right to continue his possession under the old lease. His possession of the premises must be assumed to have been continued under his legal title, and not under the permission of the landlord, for he needed no such permission to protect his possession.

What was it the parties undertook to accomplish by the conversation recited? The plaintiff evidently undertook to get an increased rent, and the defendant just as certainly promised to give it to him. The plaintiff testified that the tenant stated "he wanted to rent the brick new store building." This might have been said by the tenant in ignorance of his legal rights, and under the supposition that the destruction of the original buildings terminated his interest therein; but however that may be, he did not indicate an intention to

surrender a lease covering twelve rods of land in length and thirty feet in width to obtain the possession of the new building alone. The sole object and purpose of the new contract seems to have been to continue the occupation of the defendant under the existing lease with an increased rent. The old lease was neither surrendered, abrogated nor annulled, and, indeed, no allusion was made to it in the conversation, and the only purpose of the parties seemed to be, to leave it in operation and change one of its provisions, viz., that relating to the amount of rent reserved. There was no attempt to create a new term, or to change the extent of the estate demised, or, in fact, to execute a new lease inconsistent with the continued existence of the original one. It seemed to have been assumed by the parties that the defendant could still continue in possession of the whole premises, including that part covered by the buildings, and that he should continue thus to occupy them during the unexpired term of his original lease. It would be doing violence to the plain purpose of the parties to assume that the defendant thereby intended to surrender the rights which he had in possession under his written lease, for a new tenancy subject to be terminated by his lessor at the end of one month, or that he intended to surrender that portion of the property which was not covered by the buildings. No such purpose can be implied from the conversation. If it could in any way be held to have effected a new lease of the premises it must also be held, in view of the circumstances and the obvious intention of the parties, that it was intended to continue during the unexpired term of the existing lease. Such a term could not be created by parol, and the agreement, therefore, could not create a valid lease, and thereby effect a surrender of the existing lease by operation of law. The case seems to us to come directly within the decision in *Coe* v. *Hobby*, and to be controlled by it.

The claim of the appellant that the erection by the landlord of a brick building at an increased cost was a sufficient consideration for the alleged contract, is not supported by the evidence. The landlord had determined to rebuild of brick long

before this conversation occurred, and the building had been substantially finished before the alleged agreement was made.

So also the claim, that the surrender of the claim for rent during the time that the building was in process of erection was a sufficient consideration, is untenable. That rent was payable under the defendant's covenant and a parol unexecuted agreement to discharge the claim, was inoperative and void. (*Coe* v. *Hobby, supra.*)

The claim, also, that the agreement to allow the tenant to put in the fixtures and apply the cost thereof to the extent of $250 upon the rent, has no relation to the provisions of the contract under consideration. The tenant thereby simply agreed to sustain an expense which the landlord would otherwise have borne, and the promise of the landlord to apply it on the rent was an easy method for him to defray the cost of the improvement to his property.

Our conclusion is, that the conversation referred to established a simple executory agreement, without consideration, to alter the terms of an existing unexpired lease in which no breach had occurred, and that it was, therefore, void.

The judgment of the General Term should be affirmed.

All concur.

Judgment affirmed.