### DANZIGER *v.* FALKENBERG *et al.*

*(Supreme Court, General Term, First Department. May 13, 1892.)*

1. LANDLORD AND TENANT—INJURY TO PREMISES BY FIRE—LIABILITY FOR RENT.
   A tenant, unless he quits and surrenders possession of the premises after they have become untenantable by reason of a fire, cannot, in an action for rent due after the fire, take advantage of Laws 1860, c. 345, § 1, providing that the lessees of a building which shall be so injured by the elements as to be untenantable and unfit for occupancy shall not be liable to pay rent after such injury, and may "thereupon" quit and surrender possession.

2. SAME.
   In such case, in the absence of any agreement to the contrary, the tenant will be liable for the full amount of the rent reserved, notwithstanding the injury to the premises, and without regard to whether they are in a tenantable condition or not.

3. SAME—SURRENDER OF POSSESSION.
   If, however, the tenant at any time surrenders the premises, and the surrender is acted upon by the parties, he is not liable for rent thereafter.

Appeal from special term, New York county.

Action by Max Danziger against Charles Falkenberg and Jacob Lederer for rent. From a judgment entered on a verdict for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and ANDREWS, JJ.

*Louis Sanders*, for appellant. *H. Joseph*, (*Arthur Furber*, of counsel,) for respondents.

O'BRIEN, J. This action was brought to recover the rent of certain lofts in Howard street for the months of April and May, 1890, payable in advance. The plaintiff alleged that the defendants entered into possession of the premises under a written lease terminating February 1, 1889; that the lease was renewed for one year thereafter, and that, on the expiration of that lease, defendants held over, and continued in possession of the premises, until subsequent to the time that the rent sued for became payable; that, by the terms of the hiring, it was provided that if the premises should be partially damaged by fire, but not rendered wholly untenantable, the same should be promptly repaired by the plaintiff, but in case the damages should be so extensive as to render the premises untenantable the rent should be paid proportionately to that time, and the rent cease until the premises were put in good repair. It appears that on the 18th of March, 1890, a fire occurred, which damaged the premises; but to what extent, whether rendering them untenantable or not, was one of the questions litigated upon the trial. The plaintiff further alleged that the defendants remained in possession and occupation of the premises after the fire; and upon evidence which, plaintiff claims, sustained this contention, a liability of the defendants for rent for the months of April and May is sought to be enforced. The defendants deny that they held over, or that any rent is due, insisting that the fire rendered the premises untenantable and unfit for occupation, and that they had not been repaired up to the time of the commencement of this action. In addition the defendants allege a surrender and acceptance of the premises, and also a forcible eviction.

The first difficulty presented by this appeal arises out of a variance between the terms of the lease, as stated in the complaint, and the proof offered upon the trial. The terms of the letting set forth in the complaint, in respect to the rights of the parties in the event of a fire causing damage to the buildings, contained in prior leases, were not incorporated in the renewal of the lease, which covered the period from February, 1890, to February, 1891, during which period the fire occurred. As no point, however, in respect to such variance was made upon the trial, the rights of the parties should be determined upon the evidence introduced.

In the absence of any covenant, a tenant, at common law, was bound by the stipulated rent, though the buildings during the term might be destroyed by fire. To mitigate the rigor of this law, it was provided by section 1, c. 345, Laws 1860, as follows: "The lessees or occupants of any building which shall, without any fault on their part, be destroyed or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant; and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied." The defendants, as shown by their answer and the proof submitted, did not take advantage of this statute by surrendering possession after the fire, nor is there any evidence to support their defense that they were, after the fire, forcibly evicted from the premises; and the court very properly, therefore, withdrew this question from the consideration of the jury, which, had it been submitted after plaintiff's calling the attention of the court to the absence of such evidence, would have been a fatal error.

This leaves us to consider the other defense relied upon, of a surrender of

the premises after the fire at the request of, and in the taking of possession by, the plaintiff. One of the defendants testified that such a surrender was the result of a conversation had with the plaintiff about four weeks after the fire, which would make it about April 15th; and the other defendant testified that it was about a month after the fire when he had a conversation with the plaintiff, which resulted in the surrender of the keys. It will thus be noticed that, prior to the interviews with the plaintiff, defendants did not elect, as they would have had a right to do under the act, to abandon the premises, nor had they surrendered the same to the landlord. The evidence is susceptible of the view that they thought their rights were to be determined according to the covenants of the former leases, which would have secured to them an abatement of rent until the repairs had been made to the buildings. As we have seen, however, such covenants not being in existence, they were called upon either to elect to terminate the lease or retain possession, in which latter case they would be liable for rent whether the premises were in a tenantable condition or not. This view finds support in the case of *Smith* v. *Kerr*, 108 N. Y. 34, 15 N. E. Rep. 70, which says: "Upon the destruction by fire of a structure occupied by a tenant, no obligation rests upon either the landlord or the tenant to rebuild it, in the absence of covenants in the lease requiring it to be done. *Doupe* v. *Genin*, 45 N. Y. 119. The tenant is, however, at common law, liable to pay the rent reserved by the lease so long as any part of the demised premises remains in existence, capable of being occupied or enjoyed by such tenant. Under the statute, however, in case of the destruction of such buildings, the tenant is entitled to exercise an option either to declare the lease at an end, and quit and surrender possession of the premises, or to continue in the possession thereof until the expiration of his term, paying the rent reserved by his lease. Chapter 345, Laws 1860. The mere fact of the destruction of the buildings does not terminate the lease; and the tenant, unless he exercises this option, and effects a full and absolute surrender of the premises, continues liable, under the covenants of his lease, for the payment of rent." The evidence already referred to shows that, a month after the fire, defendants had elected to retain their lease, and asked for repairs; refusing to pay the rent until they were made. This, having in view their relations to the property under the letting, they were not at liberty to do. They were bound to elect whether they would avail themselves of the statute, and surrender possession, or remain; and such election, when made, was binding on them. Having, therefore, elected to remain, intending, no doubt, to occupy the premises when repaired, they could not refuse to pay rent which was then due and payable; and in this connection the condition of the building was wholly immaterial. In other words, on the 1st day of April, 1890, the rent for that month was due; and at that time the defendants were in possession, having elected to remain pending arrangements with the landlord in respect to repairing the premises. This being their position and attitude, they were liable for the rent which became due on April 1st, and we regard the plaintiff's exception to the refusal of the court to direct a verdict for the April rent as well taken.

The other question remains, however,—as to the effect of the surrender upon defendants' liability for the May rent. The interviews between the parties, which, it is claimed, resulted in such surrender, took place in April, and if then made and acted upon by the parties would be a good defense to the claim for rent for any subsequent period. We think the evidence was sufficient to justify the conclusion reached by the jury, that the premises were then surrendered; but, inasmuch as it is impossible to modify the judgment by giving credit to the plaintiff for the April rent, it will be necessary to have a new trial, and upon such new trial, to avoid the confusion and doubt which arise upon this record in respect to the precise questions that the jury should con-

sider, we suggest that the questions, if more than one, should be separately presented for their consideration. The judgment should accordingly be reversed, and new trial ordered, with costs to appellant to abide the event.

All concur.