JACOB H. MYERS, Appellant, v. GEORGE C. BUELL, Executor of GEORGE C. BUELL, Deceased, and Others, Respondents.

*Contract with reference to the disposition of the stock of a corporation — the intention of the parties will prevail in its construction.*

A corporation engaged in the manufacture and sale of a patented machine had a quantity of treasury stock which it desired to sell in order to raise money with which to continue its business. Some of the stockholders, hoping to create a market for the treasury stock, entered into an agreement bearing date December 27, 1895, by which they agreed to place their stock in the hands of a certain person, to be retained by him until January 1, 1897, and not to be withdrawn or sold without the consent of all the stockholders signing the agreement, unless the treasury stock should bring into the treasury $50,000.

A stockholder named Myers refused to sign the agreement, but was finally induced to do so in reliance upon a contract by which certain other stockholders agreed that sixty shares of his stock should be excepted from the escrow agreement and left with the treasurer of the corporation, and that before any of the treasury stock should be sold, fifty of the sixty shares of Myers' stock should be sold at not less than par and the proceeds thereof should be paid to him, the remaining ten shares to belong to the corporation.

The escrow agreement having failed in its purpose, a new corporation was formed to manufacture and sell the machines on a royalty. The sum of $5,000 was neces-

sary in order to satisfy the floating indebtedness of the old company and thus avoid any interference with its property and assets. For the purpose of providing this sum, the agreement between the old and the new corporations, which was dated December 12, 1896, contained a clause by which the new corporation agreed within four weeks to purchase from the old company fifty shares of the capital stock and to pay therefor the sum of $5,000 in cash, which sum the old company agreed to apply in payment of its debts.

December 24, 1896, fifty shares of stock, no part of which belonged to Myers, were transferred to the new company and it paid the old company therefor $5,000.

*Held,* that the transfer of the stock from the old to the new corporation was not a sale of such stock, within the meaning of the contract in reliance upon which Myers signed the escrow agreement, and that it did not entitle him to recover the sum of $5,000 from the parties who made such contract with him.

APPEAL by the plaintiff, Jacob H. Myers, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 15th day of December, 1899, upon the decision of the court, rendered after a trial before the court without a jury at the Monroe Trial Term, dismissing the complaint upon the merits.

*John Van Voorhis,* for the appellant.

*James Breck Perkins,* for the respondents.

WILLIAMS, J. :

The judgment appealed from should be affirmed, with costs. The action was brought to recover damages for breach of contract.

The Myers American Ballot Machine Company was organized in 1890 with a capital of $100,000, 1,000 shares of $100 each. The stock was subsequently increased to $300,000. Myers, the plaintiff, had 1,000 shares of the par value of $100,000. Some part of this stock Myers distributed and sold, so that at the time the contract in suit was made he had actually only 377 shares. Of the remaining 2,000 shares about 775 shares were in the treasury unsold when the contract was made and the balance had been sold to the public. The latter part of 1895 the company was financially embarrassed and had no money to continue the business with. It was desirable that the stock in the treasury should be sold to raise money. It could not be sold, however, at less than par, and the stock owned by individuals being offered at less than par the treasury stock could not be sold. A plan was, therefore, proposed that all the

stockholders living in Monroe county should place their stock in the hands of some person in escrow until January 1, 1897, about one year, and thus withdraw it from the market and prevent the offer of stock below par, and by which plan it was hoped that the treasury stock could be sold. The plaintiff declined at first to consent to this plan. The escrow agreement was prepared and signed by the other stockholders. It was dated December 27, 1895, and provided in substance that, when it was signed by the holders of eighty-five per cent of the stock of the company residing in Monroe county, they would place the certificates of all their stock in the hands of William R. Seward of Rochester, N. Y., to be retained by him until January 1, 1897, not to be withdrawn or sold without the consent of all the stockholders signing the agreement, unless the sale of treasury stock should bring into the treasury $50,000. The plaintiff was induced to sign this agreement by the giving to him of the contract in suit dated the same day, signed by the defendants, wherein they agreed with him in effect that sixty shares of his stock might be excepted from the escrow agreement and left with the treasurer of the company, and before any of the treasury stock should be sold fifty of the sixty shares of plaintiff's stock should be sold at not less than par and the proceeds thereof be paid to him as it was sold, and when the fifty shares should be sold the remaining ten shares should belong to the treasury of the company. The escrow agreement was signed by the holders of stock, including the plaintiff, the stock was delivered to Seward and the plaintiff's sixty shares to the treasurer of the company. Efforts were thereafter made to sell the treasury stock, but none could be sold, and the financial condition of the company grew steadily worse. In November, 1896, a proposition was submitted from a number of the stockholders to manufacture and sell the machines and pay the company a royalty thereon, and their proposition resulted in the organization of a new company known as the American Ballot Machine Company, and in an agreement between the old and new companies, bearing date December 12, 1896, wherein it was among other things agreed that within four weeks the new company would purchase from the old company fifty shares of the capital stock, and pay therefor $5,000 in cash and the old company would apply the money when received in the payment of its debts; that the old company would sell to the new

company all its property, real and personal, except its patents, with the exclusive right to manufacture and sell the machines for an amount equal to the total indebtedness of the old company, after applying thereon the $5,000 to be paid for the fifty shares of stock, the purchase price, however, to be at least $50,000, one-half to be paid within one year and the other half within two years, with quarterly interest; that possession of the property would be given at once, and that the new company would furnish the necessary capital, perfect the machines and continue the manufacture and sale thereof and pay the old company a royalty of twenty-five per cent of the selling price thereof. The agreement contained other provisions as to details not necessary to be recited here.

The $5,000 to be paid for the fifty shares of stock was necessary in order to satisfy the pressing floating indebtedness of the old company, and thus avoid any interference with its property and assets.

The agreement was not in fact executed until December 17, 1896. Authority to execute it by the old company was given by resolution at a stockholders' meeting held December 4, 1896. The plaintiff was present at that meeting and objected to the resolution, but during all the discussions with reference to the agreement he made no objection to the provision for the sale of the fifty shares of stock and the application of the $5,000 to be paid therefor to the satisfaction of the debts of the old company.

December 24, 1896, the fifty shares of stock were transferred to the new company, and it paid the old company therefor $5,000. Upon learning of this the plaintiff served upon defendants a demand for the sum of $5,000, under the contract in suit. Thereupon the two companies agreed to rescind the clause in their agreement providing for the transfer of the fifty shares of stock, and the stock was returned to the old company, that company retaining the $5,000. This action was commenced January 12, 1897, and the plaintiff based his right to recover upon the clause in the agreement providing for a sale of the fifty shares of stock for $5,000, and the transfer of the stock and payment of the purchase price therefor pursuant to the agreement. No part of this stock transferred belonged to the plaintiff. The defendants claim that the contract was void because it could not be performed by them, and the plaintiff knew it; that

it never became binding because the escrow agreement was not effectual, inasmuch as eighty-five per cent of the stock held in Monroe county was not delivered to Seward; that plaintiff failed to comply with the contract himself in that he did not deliver to Seward all his stock except the sixty shares delivered to the treasurer of the old company, but sold some of it after the escrow agreement was made and in violation thereof; that he waived his right to insist that the agreement between the two companies was a violation of the contract in suit by taking part in the negotiations for such agreement, and failing to object to the provision as to the sale of the fifty shares of stock from the old company to the new company, and the application of the money to be realized therefrom to the payment of the old company's debts; that this provision in the agreement did not constitute a breach of the contract in suit, nor authorize the plaintiff to recover of defendants the $5,000, and, lastly, that the plaintiff has suffered no damage which he can recover under his contract.

Whatever may be said as to the other objections to a recovery, it is clear that the provision in the agreement as to the transfer of the fifty shares of stock for $5,000, to be applied in payment of the old company's debts, was not a provision for a sale of treasury stock within the meaning and contemplation of the parties in making the contract in suit, and the carrying out of such provision was not, therefore, a violation of such contract. No such agreement for the general conduct of the business as that subsequently made between the companies was contemplated when the escrow agreement was entered into, or the contract in suit was made.

The parties in December, 1895, expected that the business would be continued by the old company, and they were providing for the sale of treasury stock to raise money needed in the business. They tried to carry out this scheme during nearly the whole year, while the stock remained in escrow, but they were unable to sell a share of it. The escrow agreement was to terminate January 1, 1897, and the agreement between the companies was not executed until December 17, 1896. They waited some time after the agreement had been prepared, to give the plaintiff an opportunity to work out some scheme of his own to continue the business, and then he having failed, and the escrow agreement having also failed thus far to

bring any money into the treasury, and only fourteen days of its term remaining, the agreement between the companies was made. The provision in the agreement was not necessarily for a present sale of the stock, but for a sale within four weeks, and if the transfer and receipt of the money had not in fact occurred until after January 1, 1897, when the term of the escrow agreement expired, plaintiff's right to maintain this action would certainly have been doubtful. The transfer was made, however, December 24, 1896, during the term of the escrow agreement, and we are, therefore, to determine whether such transfer constituted a sale of the stock within the contract in suit, whether it was one fairly within the contemplation of the parties, and, therefore, covered by that contract. Five thousand dollars was necessary to satisfy the pressing floating indebtedness of the old company so as to protect its property and assets from legal process, and the new company agreed to furnish this money. It asked, and the agreement provided, that treasury stock of the old company of the par value of the money should be transferred to it in form as a consideration for such money. The money so provided by the new company could not be paid to the plaintiff. It was necessary to use it for the payment of debts, and it would not have been furnished for any other purpose. Under these circumstances, we think that neither the provision of the agreement nor the transfer of the stock thereunder was a sale within the meaning of the contract in suit or the contemplation of the parties thereto.

This view has abundant support in the text books and the decisions of the courts, to which our attention is called. (Beach Mod. Cont. § 702 ; *Smith* v. *Kerr*, 108 N. Y. 31, 37 ; *Hoffman* v. *Ætna Fire Ins. Co.*, 32 id. 405, 411, 412 ; *Keeney* v. *Home Ins. Co.*, 71 id. 396, 401, 402.)

Beach, in his work, says : " It is a cardinal rule in the construction of all contracts that the intention of the parties is to be inquired into, and if not forbidden by law is to be effectuated. * * * To ascertain the intention, regard must be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view. The words employed, if capable of more than one meaning, are to be given that meaning which it is apparent the parties intended them to have."

Judge RUGER (in 108 N. Y. 37) says : " In the construction of contracts it is the duty of the court to put itself, as near as may be, in the situation of the parties and from a consideration of the surrounding circumstances, and the occasion and apparent object of the parties, determine therefrom the meaning and intent of the language employed in framing their agreement."

In the two cases in 32 and 71 New York, policies of insurance provided in effect that they should be void if the property should be sold and conveyed, or there should be any changes in the title, or possession thereof, and it was held that a transfer from one partner to another, or the appointment of a receiver, and consequent change of possession, did not render the policies void. In the earlier case there was a transfer from one partner to the other, and the question was as to the meaning of the words in the policy *" sold and conveyed."* The court held the words were to be given a restricted meaning and were not to be understood in their largest sense without restriction or limitation. The court quoted from Powell on Contracts, 389, " The matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense ; and, therefore, the generality of the words used shall be restrained by the particular occasion." And from Bacon's Law Maxims (Reg. 10) : " All words, whether they be in deeds or statutes or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the person."

In the latter case there was a receiver appointed of the property, and the question was whether there was a change of possession under the language used in the policy. The court cited the case in 32 New York, and limited the meaning of the words in the policy under the principle of the earlier case.

We think these principles are decisive of the question we are considering. The escrow agreement was made for the purpose of enabling the old company to raise money by a sale of its stock to carry on the business with, and the contract in suit related to that agreement, and provided that as to any sales of stock by the old company under that arrangement, and for that purpose, plaintiff should have his fifty shares of stock sold first and should have the $5,000 received therefor. The purpose of the escrow agreement

failed. · No stock could be sold, none was sold, under that arrangement. The old company thereupon formed the new plan, and made the agreement with the new company, and under that agreement transferred its own stock and not plaintiff's to the new company, receiving the money therefor to use, not as it saw fit, but for a specific purpose only, which must be complied with in order to get the money at all. No such transfer as this was contemplated by the parties to the contract in suit, and such a transfer was not a *sale* of the stock, within the meaning of the contract.

Our conclusion is that the judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.