GLASSHEIM v. MILLER.

(Supreme Court, Appellate Term, First Department. December 30, 1915.)

LANDLORD AND TENANT ⊖⇒33—RENT—MODIFICATION OF LEASE.

 Plaintiff, by a sealed lease for six years, leased to defendant certain premises, divided into two stores, for $138 a month, with a provision against subletting without plaintiff's consent. Defendant sublet one of the stores to M. for $70 a month, collected the rent for the month of May, and paid plaintiff $138 for that month. About May 3d it was verbally agreed that plaintiff would deal directly with M., and collect $74 a month from him and $68 from defendant, thus receiving an increased rental of $4 a month, that M. would make a deposit as security, and that new leases to defendant and M. would be drawn up. A lease was drawn up, but defendant's attorney refused to allow him to sign it, and M. received back his deposit and vacated the premises. *Held*, that defendant was liable to plaintiff for the whole rent for the month of June, and did not discharge such rent by tendering $68, as there could be no surrender of the existing lease by operation of law, in the absence of a new lease valid in law, and, it being the obvious intention of the parties that the modification of the lease was to continue during the unexpired term of the existing lease, a new lease could not be created by parol, under Real Property Law (Consol. Laws, c. 50) § 259, requiring leases for longer than one year to be in writing, and, moreover, the unexecuted parol agreement could not modify the existing sealed lease.

 [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 93–96; Dec. Dig. ⊖⇒33.]

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Proceeding to dispossess a tenant by Morris Glassheim against Joseph Miller. From a final order in favor of the tenant, the landlord appeals. Reversed, and final order directed for the landlord.

Argued December term, 1915, before GUY, PAGE, and PHILBEN, JJ.

⊖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Peirce, Hulbert & Hopkins, of New York City (G. Murray Hulbert, of New York City, of counsel), for appellant.

Fischer, Wolf & Villamena, of New York City (Charles Fischer, of New York City, of counsel), for respondent.

GUY, J. The proceeding was brought to dispossess the tenant Miller for nonpayment of $138 monthly rent of demised store premises, alleged to be due June 1, 1915. The defense litigated was that subsequent to the commencement of the term, and entry and possession by the tenant, under a sealed lease for the term of six years beginning October 1, 1914, the landlord and tenant entered into an agreement modifying the lease, and that under such modification the tenant was confined to only a part of the demised premises, at the rental of $68 per month; that pursuant to such modification the tenant confined himself to such part of the store and vacated the balance; that the landlord entered into an agreement with one Montgomery, by which the said Montgomery leased the portion of the premises vacated by the tenant, and Montgomery agreed to pay the landlord $74 per month for such portion of the premises, and deposited with the landlord $148, being two months' rent for his portion of the store, as security for the performance of the covenants of his lease; that the tenant had tendered to the landlord $68, the amount of rent due under the alleged modified agreement for the month of June, 1915, and that the landlord had refused to accept said sum.

Under the provisions of the lease to Miller, the tenant in this proceeding, the landlord divided the store into two parts, and it was covenanted that the two stores should be used exclusively as stationery and tailor shops, and that the tenant was prohibited from underletting any part of the premises without the landlord's written consent. About the end of April, 1915, the tenant Miller discontinued business in the northerly store, and sublet that store without the landlord's consent to Montgomery, from whom he received $70 rent for the month of May for that part of the premises. He afterwards paid the landlord $138 for the May rent, being the amount prescribed by his lease. On or about May 3d, the landlord, his attorney, the tenant, and Montgomery, the subtenant, had a conversation at the demised premises, and, adopting the tenant's version of what took place on that occasion, which was evidently credited by the jury, it was agreed that the landlord thereafter would deal directly with Montgomery and collect $74 a month from him for the northerly store; that he would accept $68 a month from the tenant Miller, thus getting an increased rental of $4 a month; that Montgomery would deposit $148 as security with the owner of the fee; and that the attorney would draw up two leases, one to the tenant and the other to Montgomery at a cost of $50, to be borne equally by the tenant and Montgomery.

The attorney subsequently drew up one lease, not two, and received $48 from Montgomery for his services, and also the $148 deposit for the owner; but when the attorney for Miller, the tenant, read the proposed lease, he refused to allow the tenant to sign it, on the ground that it did not conform with the verbal arrangement, and the result

was that Montgomery received back the $148 which he paid as security under the new arrangement, and vacated the northerly store on June 1, 1915. No defense was established to the landlord's application for the possession.

In Seymour v. Hughes, 55 Misc. Rep. 248, 105 N. Y. Supp. 249, a summary proceeding for the holding over the term, the lease prescribed an annual rental of $1,600, and contained a clause giving the landlord the right at any time to terminate the same on 60 days' notice. The defense was that the lease had been modified by a reduction of the rent and the elimination of the cancellation clause; and this court held, as one of two conclusive reasons why the final order for the tenant should be reversed, that the alleged agreement did not operate as a surrender of the original lease, and that, if it was intended to effect a new lease for the unexpired term, it could not be created by parol. So in the present case, though there probably was a consideration for the new agreement, because of the increased rental and the security provided for, there could not, under the circumstances disclosed, be a surrender even by operation of law of the existing lease to Miller, in the absence of a new lease valid in law, according to the contract and intention of the parties, to vest in the tenant a term exceeding five years; for such new term for a period of more than one year could not, under the statute (Real Property Law, § 259), be created by parol. Smith v. Kerr, 108 N. Y. 31, 15 N. E. 70, 2 Am. St. Rep. 362; Coe v. Hobby, 72 N. Y. 141, 28 Am. Rep. 120.

Although it does not appear that anything was said when the arrangement was made with the tenant and Montgomery as to the time during which the alleged modification should continue, the tenant avers in his answer that his six-year lease was modified by the reduction of his rent and by confining him to the southerly store, and as the court said in an analogous case (Smith v. Kerr, 108 N. Y. at page 38, 15 N. E. 70, 2 Am. St. Rep. 362) it was the obvious intention of the parties that the modification was to continue during the unexpired term of the existing lease.

Further, the parol agreement was unexecuted, so that the existing sealed lease could not be modified by such agreement. Voege v. Ronalds, 83 Hun, 115, 31 N. Y. Supp. 353; Seymour v. Hughes, supra; McCreery v. Day, 119 N. Y. 1, 23 N. E. 198, 6 L. R. A. 503, 16 Am. St. Rep. 793. The terms of the alleged modification were arrived at on May 3, 1915, and Miller, the tenant, after the receipt of the balance of the rent due from his subtenant, Montgomery, for that month, paid all the May rent as prescribed by the sealed instrument. During the whole of the month Miller was the tenant of the entire premises, and Montgomery was his subtenant. No new lease or leases were ever executed. The deposit was returned to Montgomery, and subsequently, on June 1st, he terminated his subtenancy by vacating the northerly store.

It follows that the tender of $68 was insufficient to discharge the June rent, and the final order appealed from is reversed, and a final order directed to issue, awarding the delivery of the possession of the premises to the landlord, together with $10 costs in the court below and $30 costs of this appeal. All concur.