LOUIS FLEISCHMAN, Respondent, *v.* LIPPMAN TOPLITZ,
Appellant.

Under and by the act of 1860 (Chap. 345, Laws of 1860), in reference to
the rights and liabilities of lessees of buildings in case of their destruc-
tion by the elements, or injury so as to be untenantable, upon the
destruction by fire of a building occupied by a tenant, the relation
between a tenant and his landlord is dissolved, unless he elects that it
shall continue.

A notice to the landlord from the tenant of his intention to surrender is
not necessary, he is simply required to surrender as soon as reasonable
under the circumstances.

Plaintiff leased from defendant certain premises in the city of New York
upon which were stables, for the term of five years from November 1,
1872. The lease provided that plaintiff should, at his own cost, comply
with the rules and regulations of the board of health of the city. The
stables were destroyed by fire July 25, 1877, and a number of horses
were burned to death. Immediately after the fire a notice was served
upon defendant by the board of health requiring him to remove the
debris. This he sent to plaintiff with a letter referring to the provision
of the lease and requesting him to do the work, adding that if it should
be decided that he (defendant) was to pay for it he would do so. Plaintiff
thereupon commenced the work, which was completed July thirty-
first; he had paid the rent to August first, and did not occupy the prem-
ises after the fire, except to uncover and remove the dead horses. In
an action to recover the expense of the work, a recovery was had for
the cost of removing the debris other than the dead horses. *Held*, no
error; that the facts did not authorize a finding, as a matter of law, that
plaintiff had elected to continue his tenancy, as the occupation after the
fire was not necessarily under the lease.

*It seems* that as the lease was terminated, the plaintiff, as between him and
his landlord, was not bound by its terms to perform any act made neces-
sary by the fire, but any burden cast upon the premises thereby was
to be borne by the landlord, and so defendant was not bound to remove
the dead horses.

Upon the trial, defendant read from a letter of plaintiff, dated August
ninth, an extract to the effect that all his property that could be reached
having been removed, his watchman had been withdrawn; plaintiff
was permitted to read from the same letter an extract stating that a bill
inclosed was for extra help hired pursuant to defendant's directions and
instructions. *Held*, no error.

Reported below. 57 Hun, 126.

(Argued June 2, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 6, 1890, which modified a verdict for the plaintiff directed by the trial court, by deducting there-from $9,188, and in all other respects overruled the exceptions directed to be heard in the first instance at the General Term.

The action was to recover for money expended by the plaintiff in the removing the debris and carcasses of dead horses from premises on West Thirtieth street, New York city, immediately after a fire which occurred July 25, 1877, and destroyed the stables upon the premises and caused the death of thirty-seven horses which were therein at the time. The defendant was the owner of the premises; the plaintiff was his tenant under a written lease for the term of five years from November 1, 1872. The lease contained the clause that the plaintiff " at his own proper cost, charge and expense, will comply with all the rules, orders and requirements of the department of buildings of the city of New York, and the board of health of said city." Immediately after the fire a notice was served upon the defendant by the board of health requiring him to remove the debris. The defendant sent the notice to the plaintiff in a letter which, after referring to the order, proceeded : " In my lease with you it is especially pro-vided that you have to comply with the requirements of the board of health. The work must be done at once, and I would therefore request you not to delay a moment. If it will be decided that I have to pay for it, I will do so cheerfully."

The plaintiff immediately procured the work to be done. It consisted of throwing aside and piling up the bricks and. other debris, so as to uncover the dead horses and then taking them away. The expense of the work upon the debris necessary to be done to uncover the dead horses and make ready for their removal was $465.50, and the expense of removing them was eighty-three dollars and forty cents. The work was completed July thirty-first. Plaintiff had paid the rent up to August first. He paid none afterwards, and his

only occupation of the premises after the fire was for the purpose of removing the dead horses and making some salvage of damaged property belonging to him. The plaintiff, August ninth, sent to the defendant the bills for the expense of the work upon the debris and for the removal of the dead horses. This letter stated : " Since all the property belonging to us that could be reached has been removed our watchman has been withdrawn."

At the close of plaintiff's testimony the defendant moved for a nonsuit upon the ground that the plaintiff by the terms of the lease was bound to obey all the orders of the board of health, and therefore to remove the dead horses and the debris incident to such removal, and apart from the lease was bound to do so. This motion was denied, and after some evidence on the part of the defendant to the effect that the plaintiff, prior to the letter of August ninth, gave the defendant no notice of his intention to quit the premises, and that the only promise of the defendant was to pay if he should be liable, the defendant's counsel moved for a nonsuit upon the whole testimony, which was denied. The defendant's counsel then asked to go to the jury and requested the court to charge that if the plaintiff did not notify the defendant prior to the ninth of August, that he intended to surrender the premises, the lease did not terminate till then. The court denied defendant's request to go to the jury. Defendant's counsel renewed his request to go to the jury, and asked the court to charge that if the plaintiff remained in possession of the premises after August first, he did not quit and surrender them to defendant within the meaning of chapter 345, Laws of 1860, and that that being so, the defendant was entitled to a verdict. The court again refused, and the defendant then moved that the court direct a verdict in his favor. This motion was denied. The court upon motion of plaintiff's counsel then directed a verdict in plaintiff's favor for the whole amount claimed. The defendant's counsel duly excepted to the several refusals and rulings.

The General Term held that the plaintiff ought to pay for

the removal of the carcasses of his dead horses, and the defendant for the labor upon the other debris, and directed judgment accordingly.

Further facts are stated in the opinion.

*E. T. Brackett* for appellant.

*A. J. Dittenhoeffer* for respondent.

LANDON, J. The defendant's motions for a nonsuit were properly denied. They were based upon the assumption, which, we think, was untenable as a matter of law, that the relation of landlord and tenant continued between the parties, after the destruction of the buildings by fire until the plaintiff gave notice of his intention to surrender the leasehold premises, or at least until he did surrender them.

His requests to go to the jury were coupled with the same assumptions of law, and he thereupon asked the instruction that if the plaintiff did not give the notice of his intention to surrender the premises until the ninth of August, or remained in possession of the premises until that date, the plaintiff was not entitled to a verdict.

The facts in these respects were as assumed by the defendant, but we think the law was not.

The statute, Ch. 345, Laws of 1860, dissolved the relation of landlord and tenant between the parties unless the plaintiff elected that it should continue. (*Smith* v. *Kerr*, 108 N. Y. 31 ; *Johnson* v. *Oppenheim*, 55 id. 280.) The tenant's election to continue the relation no doubt could be inferred from circumstances. The act, however, does not require the tenant to serve the landlord with notice that he intends to quit and surrender ; it provides that upon the destruction of the building without fault of the tenant, the latter " may thereupon quit and surrender possession of the leasehold premises." If he does this as soon as it is reasonable for him to do it under the circumstances, he does it soon enough. Here, the destruction of the buildings was complete. The plaintiff's term as

tenant would expire in less than four months. His rent was paid until August first. The defendant requested the plaintiff to execute the order of the board of health, in effect without prejudice to the question of liability. It was proper that the plaintiff should rescue such of his damaged property from the wreck as was worth the labor. The defendant did not ask from him any expression of his purpose respecting the continuance of his tenancy. It is inferable from the circumstances that the defendant regarded it impossible for the plaintiff to continue the tenancy. The few days that he spent in removing the dead bodies of the horses and his own damaged property did not mislead the defendant nor prejudice his interests. The defendant accepted the surrender. The court could not, under these circumstances, hold, as a matter of law, that the plaintiff had elected to continue his tenancy, or had in fact continued it. His occupation subsequent to the fire was not necessarily under the lease, but so far as it was necessary for the removal of the dead bodies of the horses, it was upon the request of the plaintiff ; and for the remaining time, it might have been found to have been upon the implied request of the plaintiff for time sufficient to remove his own property, and if so, and if any liability was thereby incurred, it was for use and occupation. (*Austin* v. *Field*, 7 Abb. [N. S.] 29.) But the defendant did not request to submit to the jury the question whether plaintiff elected to continue under the lease, or failed to surrender the premises pursuant to the statute, but asked an instruction that the plaintiff could not recover, because he did not notify the defendant until August ninth that he intended to surrender, and also because he remained in possession after July thirty-first, and also up to August ninth, neither of which requests was tenable.

The defendant also moved for a nonsuit because, as he assumed, the plaintiff was bound to remove the dead bodies of the horses, not only under the terms of the lease which bound him to obey the orders of the board of health, but also apart from the terms of the lease, as the owner of such dead bodies.

If the lease was terminated by the statute upon the destruc-
tion of the buildings, it is clear that the plaintiff as tenant and
as between himself and his landlord, was not bound by its
terms to perform any act in respect to the premises which the
fire made necessary to be performed.   Such performance could
not be made until after the relation of landlord and tenant
had ceased.   Nor would the tenant in such case, apart from
the terms of the lease, be obliged to remove the dead bodies
of the horses.   The act of 1860, in case of a dissolution of
the relation of landlord and tenant under it, enables the
tenant to quit and surrender the premises, and discharges him
from liability for rent for the unexpired term.   Manifestly, the
damage to the real estate and the burden cast upon it by the
fire must in such case be borne by the landlord and not by the
tenant.   The tenant is free to depart from the untenantable
premises ; the landlord resumes possession of his premises in
the condition the fire has left them.

The defendant after the denial of his motions and requests
above considered moved the court to direct a verdict for the
defendant.   For the reasons already considered this motion
was properly denied.   No request which it was proper for the
court to grant being made to submit any question of fact to
the jury, the court did not err in assuming that the defendant
did not desire to go to the jury upon any question of fact
touching the plaintiff's intention to continue the tenancy, or
election to do so, and hence did not err in deciding upon the
evidence that the plaintiff had no such intention, nor made
such election, and thereupon directing a verdict for the plaintiff.

A question of the admissibility of evidence is presented.
After defendant read from plaintiff's letter of August ninth,
the extract quoted above, with respect to the removal of his
property and withdrawal of his watchman, the plaintiff was
permitted to read from the same letter an extract to the effect
that the bill inclosed in the letter was for extra help hired
pursuant to defendant's directions and instructions.   This was
the bill for $465.50.

While this part of plaintiff's letter did not relate to the

same subject as the part read by the defendant, and did not modify or explain it (*Rouse* v. *Whited*, 24 N. Y. 170; *People* v. *Beach*, 87 id. 508; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 id. 274), yet as it was of a nature to elicit a reply from the defendant and none was made, it was admissible upon the latter ground.

As no error of the trial court requires a reversal, and as the General Term modified the judgment in defendant's favor, and the plaintiff does not appeal, the judgment of the General Term should be affirmed with costs.

All concur, except VANN, J., dissenting.

Judgment affirmed.