DECKER v. MORTON.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. SURRENDER OF LEASE—REASONABLE TIME.
    The reasonable time which the law allows a tenant for the removal of his property from a burned building must be solely for that purpose, and he cannot be permitted to occupy the premises to promote his convenience in adjusting his losses with the insurers unless he pays reasonable value for such occupation.

2. SAME—PREMISES RENDERED UNTENANTABLE—EXPENSES.
    Where premises are rendered untenantable by fire, and the tenant surrenders them, the expense of removing the débris occasioned by the fire falls upon the landlord.
    Cullen, J., dissenting.

Appeal from Kings county court.

Action by Philip A. Decker against Andrew Morton. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

Sol. A. Hyman, for appellant.
T. J. Molloy, for respondent.

GOODRICH, P. J. The plaintiff, being the owner of three adjacent buildings on East Eleventh street, New York City, leased to the defendant, by a verbal lease, the three upper lofts, 62 by 55 feet in size, from October 1, 1895, to October 1, 1896, at the rental of $75, payable monthly in advance. The rent was paid up to and including the month of June, 1896. On the night of June 29th, a fire occurred in the lofts occupied by the defendant, where he conducted the business of manufacturing corks and bicycle handles. It was assumed on

the trial and argument that the fire resulted in an almost total destruction of the defendant's property and in great injury to the premises, but the plaintiff contends that they were not rendered untenantable, while the defendant claims the contrary. The plaintiff and defendant each collected their insurance indemnities from the underwriters on their respective properties. The defendant did not remove from the premises until about July 25th, and this action was brought to recover rent for the months of July and August. The complaint states separately three causes of action: First, for $150 for rent due under the terms of the lease; second, for the use and occupation of the premises during July and August; and, third, for $170, for money expended by the plaintiff in removing the débris of the defendant's property, left by the fire. The defendant's answer alleged that he remained as tenant until June 29th, and that on that day the premises occupied by him were completely destroyed by the fire, and rendered untenantable; that he was thereby compelled to remove, and that the lease consequently ceased and determined. At the trial an amendment was made to the answer, alleging a surrender of such premises to the landlord on July 25th.

The rights of the parties are controlled by the provision to be found in 3 Rev. St. (9th Ed.) p. 2178, § 1:

"The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may thereupon quit and surrender possession of the leasehold premises, and of the land so leased or occupied."

All of the requisites to successful defense, under this statute, to the first and second causes of action, are practically conceded in the appellant's brief, except the contested questions whether the premises were rendered untenantable by reason of the fire, and whether the defendant surrendered the premises to the landlord. There was evidence tending to show that nearly all of the stock and the entire plant and business of the defendant were destroyed, except certain metal portions of the machinery; that the premises became and remained untenantable; that defendant was unable to do business on the premises; that he told the plaintiff he would move out as soon as his insurance was adjusted; that he was compelled by the fire marshal to let his stock and machinery remain on the premises, under his orders, for about three weeks, during which time his insurance loss was adjusted; that the same was adjusted on July 24th; that on the 25th he commenced to move, and finished doing so in two or three days, and then vacated the premises. The plaintiff gave evidence to show the amount of the damages to the premises, and that he immediately repaired the same temporarily; that thereupon the premises were rendered tenantable; that the defendant never formally surrendered the premises, and did not leave until August 7th, when he left a lot of corks and bicycle handles; that the plaintiff expended $170 to "clean that place all out," and that thereafter the plaintiff put a new roof on the building, and made other repairs. It appears that

it took two or three weeks to adjust the plaintiff's losses, that he received $2,400 from the insurers for his damages, and that the defendant received about $9,500. The court submitted to the jury the questions whether the premises were rendered untenantable by the fire, and, if they were, whether the defendant "took the option, under the statute, to surrender" the same, and whether the plaintiff so understood. If they found these questions in favor of the defendant, he instructed them, as matter of law, that the defendant was entitled to a reasonable time to remove from the premises, and directed the jury to decide whether three or four weeks was such reasonable time. The answer alleges that the lease determined on June 29th by reason of the fire and the consequent untenantability of the premises, and the amendment to the answer alleges the actual surrender on the 25th of July. The point does not seem to have been raised at the trial that there was not sufficient evidence to show that the defendant, immediately after the fire, notified the plaintiff that he considered his lease ended. The defendant testified that he saw the plaintiff the night of the fire and the next morning, and said: "Q. State the conversation you had with Mr. Decker at which you told him you were going to give up the place after the fire. A. After the fire, Mr. Decker says: 'Who is going to have all that stuff there? Am I?' And I says, 'No.' Then he says, 'When are you going to get out?' I says, 'As soon as my losses are adjusted I will get out of here,' and I got out next day." I think that it was fairly inferable from this evidence that such notice was given the next day after the fire, and the court so understood the force of the testimony when it charged: "Did this defendant decide to quit the premises, immediately on the occurrence of the fire? Mr. Decker swears he did not; Mr. Morton swears he did, and that Decker so understood him." No exception was taken to this part of the charge, nor to the charge of the court that the defendant was entitled to a reasonable time to remove from the premises. In Bassett v. Dean, 34 Hun, 250, a fire occurred on December 27, 1881, on certain premises leased by the plaintiff to the defendant, and it was claimed by the tenant that the building was rendered untenantable. On December 29th, he notified the landlord that he should cancel the lease. He removed his goods and machinery from the building as soon as the insurance adjusters had completed their examination, and on February 3d served upon the landlord a formal surrender. The court said:

"We think that under chapter 345 of the Laws of 1860, when premises become untenantable in consequence of fire, the tenant is entitled to a reasonable time within which to remove his property from the premises occupied by him, and that what is reasonable time for that purpose is a question of fact, which must be submitted to the jury, and be by them disposed of. * * * It would necessarily involve a consideration of the character of the property on the premises, and the ease or difficulty, or both, which may be encountered in its removal."

The question arises whether the reasonable time to remove is so limited as to require a commencement of the work of removal immediately after the fire, and a completion of the removal without any reference to extraneous circumstances. In the present case we think that the fact that there was insurance upon the plaintiff's building

and the defendant's stock and machinery, and the orders of and taking charge by the fire marshal, are circumstances which might properly be taken into consideration by the jury, upon the question of what was such reasonable time. It is a familiar rule that contracts are sometimes to be construed in the light of existing customs. 2 Kent, Comm. (14th Ed.) 556. In Wilcox v. Wood, 9 Wend. 346, the court allowed proof of a local custom in the city of Albany, to show that where, by its terms, a lease was from the 1st day of May in one year to the 1st day of May in the succeeding year, it expired at noon of the last day of the lease. In the present case the plaintiff testified: "I knew that he was getting his loss adjusted. I know it is customary to leave everything after a fire just as it is, so the insurance companies can see it. I had my loss adjusted before I made repairs." This custom was known to the plaintiff, and he gave practical effect to it by leaving his own premises in the condition in which they were left by the fire, without permanent repairs, and under the orders of the fire marshal, until his loss was adjusted; and the defendant did the same thing. This custom must be deemed essential in construing the lease, so far as it relates to the question what was a reasonable time for the removal of the defendant's property. The court submitted to the jury the question whether the three or four weeks which were occupied before the removal of the defendant's property were such reasonable time as is referred to in Bassett v. Dean, supra. The consolidation act of the city of New York (Laws 1882, c. 410) established a department known as the fire department, with several bureaus, one of which was charged with the duty of investigating the origin and cause of fires, the principal officer of which was termed the "fire marshal," whose duty is "to examine into the cause, circumstances, and origin of fires,   *   *   *   and to especially inquire and examine whether the fire was the result of carelessness or the act of an incendiary." The act requires the fire marshal to make a written report of his opinion and conclusion in regard to the matter, among others, to the "New York board of fire underwriters," which is the representative of the insurance companies. These provisions were alike for the benefit of landlords, tenants, and underwriters. In the discharge of his duty, the fire marshal entered the premises on the morning after the fire, and allowed the defendant to begin to remove his goods only the day before the actual removal was commenced. The court called attention to the testimony of the defendant "that he only remained there under the instructions of the fire marshal, in order that his losses could be adjusted; and as soon as his losses were adjusted he moved therefrom." No exception was taken to this charge, and the verdict establishes the fact that the time occupied in and before the removal was a reasonable time. Austin v. Field, 7 Abb. Prac. (N. S.) 29, does not conflict with this reasoning. In that case the tenant occupied the premises after a fire, and on the trial claimed that he continued in the use of the premises under a verbal agreement with the plaintiff that the lease should be at an end, and that he should remain in order to sell his damaged goods, and should pay what the use of the store in its damaged condition was worth. The court held that under this

agreement the plaintiff could recover on the lease up to the time of
the fire, and that for the time the store was occupied after the fire
the plaintiff's remedy was for use and occupation or upon the special
agreement.

Another question arises in the third cause of action alleged in the
complaint, relating to the removal of the débris of the defendant's
goods after the fire. There was evidence on both sides of the ques-
tion whether the underwriters on the premises or the underwriters
on the goods were bound by custom to remove such débris, and this
question was submitted to the jury, which found this question also
in favor of the defendant. As there was contradictory evidence on
all these questions of fact, the finding of the jury will not be dis-
turbed.

But there is another reason why the plaintiff's exception to the
refusal of the court to direct a verdict in his favor on the third cause
of action is untenable. The case of Fleischman v. Toplitz, 134 N. Y.
349, 31 N. E. 1089, is authority for the proposition that the court
might well have dismissed the complaint as to this cause of action,
or have directed a verdict for the defendant. In that case there
was a covenant in the lease that a tenant, "at his own proper cost,
charge, and expense, will comply with all the rules, orders, and re-
quirements of the department of buildings of the city of New York,
and the board of health of said city." A fire, in which many horses
were burned, occurred on the demised premises, and the landlord
was notified and required by the city to remove the carcasses of the
dead horses. This notice was sent to the landlord, who transmitted
it to the tenant. The latter, in compliance with the order, removed
the carcasses, expending a large sum of money, but in his correspond-
ence with the landlord reserved the question whether he or the land-
lord was liable for the expenditure. The action was brought by the
tenant against the landlord for the recovery of this amount. The
court said (page 354, 134 N. Y., and page 1091, 31 N. E.):

"If the lease was terminated by the statute upon the destruction of the
buildings, it is clear that the plaintiff as tenant, and as between himself and
his landlord, was not bound, by its terms, to perform any act in respect to
the premises which the fire made necessary to be performed. Such perform-
ance could not be made until after the relation of landlord and tenant had
ceased. Nor would the tenant in such case, apart from the terms of the
lease, be obliged to remove the dead bodies of the horses. The act of 1860,
in case of a dissolution of the relation of landlord and tenant under it,
enables the tenant to quit and surrender the premises, and discharges him
from liability for rent for the unexpired term. Manifestly, the damage to
the real estate, and the burden cast upon it by the fire, must in such case be
borne by the landlord, and not by the tenant. The tenant is free to depart
from the untenantable premises; the landlord resumes possession of his
premises in the condition the fire has left them."

Under this authority the refusal of the court to direct a verdict in
the present action on such third cause of action was, therefore, not
an error of which the plaintiff can complain. We therefore see no
error in any of the rulings of the court, or in the rendition of a
verdict in favor of the defendant on all the questions submitted to
the jury.

The judgment is affirmed, with costs.

CULLEN, J. (dissenting). I am of the opinion that the plaintiff was entitled, in any event, to recover the value of the reasonable use and occupation of the premises from the time of the fire to his removal therefrom. The statute prescribes that, in case a building is so injured by the elements, or other cause, as to become untenantable, the lessee or occupant shall not be liable or bound to pay rent therefor after such injury, and he may quit and surrender possession of the premises. When such an injury occurs to the demised premises, if the tenant wishes to avoid his covenant to pay rent, he must abandon his occupancy. I concede that he may have a reasonable time to remove his property, but the time occupied must be solely for the purpose of removal. I know of no principle which allows one man to remain in occupation of another man's land for the convenience of adjusting with the fire insurance company the amount of his loss, or in pursuance of any directions of the fire marshal. The defendant's testimony is that it was for such purpose he remained in possession. That occupation was for his own convenience, and he must pay for it; not necessarily the rent reserved, for the lease had terminated, but the fair and reasonable value of the use and occupation. The trial court therefore erred in refusing to charge the plaintiff's first request.

WILLARD BARTLETT, J. I agree with Mr. Justice CULLEN that the reasonable time which the law allows the tenant for the removal of his property must be solely for that purpose, and that he cannot be permitted to occupy the premises simply in order to promote his convenience in adjusting his loss with the insurers, unless he pays the reasonable value of such occupation. I am unable to find in the record, however, any request or exception which presents this point with sufficient directness or distinctness to render it available to the appellant, and I therefore concur in the conclusion reached by Judge GOODRICH.

WOODWARD, J., concurs with BARTLETT, J.