## WATERS v. KINGS COUNTY TRUST CO. et al.

### No. 329.

Circuit Court of Appeals, Second Circuit.

July 24, 1944.

Writ of Certiorari Denied Nov. 6, 1944.

See 65 S.Ct. 121.

Sidney S. Bobbé, of New York City, for appellant.

Wrenn & Schmid, of Brooklyn, N. Y. (Denis M. Hurley and Albert Hutton, both of Brooklyn, N. Y., of counsel), for Kings County Trust Co., appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment dismissing his complaint on the merits after trial, and from an order denying his motion to retax costs of $725.80 which the judgment awarded to the defendants. The action was brought against Kings County Trust Company, hereafter for brevity called the Bank, and William Howard Barber. Federal jurisdiction was based on diverse citizenship. The amended complaint alleged in substance that the defendants employed the plaintiff to find a purchaser for the controlling stock interest in two corporations, and after he had found a purchaser ready, able and willing to buy on the defendants' terms, they in bad faith prevented the purchase from being consummated and thereby deprived the plaintiff of a commission of $25,000 which he was to receive from the purchaser if the purchase were made. The defendants' answers contained a general denial. When the plaintiff rested the trial court dismissed the complaint as against the defendant Barber for insufficiency of proof. As against the Bank the issues were submitted to a jury whose verdict was adverse to the plaintiff. After appeal was taken the plaintiff and Barber entered into a stipulation which composed their differences; hence the appeal now involves only the plaintiff and the Bank.

■■ At the conclusion of the evidence the plaintiff moved for a directed verdict. He contends that denial of his motion was error and that we should grant it. Assuming that under Federal Rules of Civil Procedure, rule 50(b), 28 U.S.C.A. following section 723(c), and the practice sanctioned in Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636, this court has power to direct a verdict in the appellant's favor, this is not an occasion for its exercise. There was plainly an issue of fact whether the plaintiff was employed by the Bank to sell stock (which it owned as trustee for two estates) or whether it merely told him in effect that it would consider any offer he might submit. The plaintiff himself testified in an examination before trial that he sought out Mr. Allen, vice-president of the Bank, and asked "if he would have any objection to my endeavoring to find a bidder for the stock * * *", and that Mr. Allen refused to put a price on the stock but said "they would be willing to entertain any bid I might bring in from a representative or responsible party." After some further talk Mr. Allen referred the plaintiff to Mr. Lambrecht, an officer in the trust department of the Bank, who testified at the trial: "I told him at that time that he was a volunteer that came in, that we didn't like to sell the stock, that it wasn't necessary, but we would be glad to do it if we got a favorable price," and that any offer would have to be submitted to the Bank's executive or trust committee for final approval. Mr. Lambrecht refused the plaintiff's request for an exclusive agency and declined to give him any written evidence of authority to sell the stock. In the light of this testimony the plaintiff's argument that the refusal of an exclusive agency "necessarily implies that he was to have a non-exclusive agency" is, to put it mildly, amazing. Equally futile is the argument that employment by the Bank is corroborated by its letters referring to the plaintiff as "the broker," e.g. exhibits 4, 12 and 17. From this the plaintiff would draw the inference that the Bank recognized him as its broker, despite the fact that other letters of the Bank expressly referred to him as agent or broker of the prospective purchaser, e.g. exhibits 5, 6 and 8, from whom, concededly, he was to receive whatever commission was to be paid him. Further reference to specific items of conflict in the evidence seems unnecessary to demonstrate that the issue of employment by the Bank was a jury question. It should also be evident from the foregoing that the jury's verdict resolving the issue against the plaintiff cannot be upset for want of supporting evidence.

■ The appellant contends that the trial court erred in modifying No. 13 of the plaintiff's requests to charge. This request was to the effect that even if the plaintiff did not bring about a complete meeting of the minds of the buyer and seller, nevertheless, if the negotiations were plainly and evidently approaching success and the Bank in bad faith or arbitrarily or capriciously terminated the negotiations, the jury should find the defendant liable. The court said he would give the requested instruction but he paraphrased it as follows:

"Counsel calls my attention to the fact that I limited myself to saying that to recover there must be a complete meeting of the minds. Of course, the fact is that if the negotiations had proceeded to such a point where it was definitely certain then if in bad faith the bank went out and upset the picture, then, of course, he would have his right."

The plaintiff excepted generally to the modification without pointing out the defect which he now urges against it, namely, that it required the jury, for a plaintiff's verdict, to find "not that the negotiations were plainly and evidently approaching success, but that a meeting of the minds was 'definitely certain' which is as certain as anything can be." It is elementary that an objection to an instruction should be specific enough to inform the trial judge of his alleged error so that he may have an opportunity to correct it. Flint v. Youngstown Sheet & Tube Co., 2 Cir., 143 F.2d 923. Obviously counsel's request "May I except to the modification?" did not serve this purpose, for the judge replied "Yes. Of course that is true. It would have to be in bad faith." Consequently the appellant's general exception is insufficient to raise the objection he now makes. But if available the point would be without merit. In his original charge the court dealt with the subject adequately in saying that the Bank was under an obligation to the plaintiff, if his story is true that he was employed by them to make the sale, to act in perfect good faith with him and not to put obstacles in his way arbitrarily and in bad faith, and if they did that then they would have subjected themselves to damages, if he was their employee.

■ Another complaint against the charge is the court's refusal to give request No. 19 relating to charging the defendant with knowledge that Sanders (in whose name the stock was purchased, defeating the transaction with plaintiff's client) was not the real purchaser, if proper and diligent inquiry would have disclosed that fact. Any duty of inquiry would arise only in case the Bank had employed the plaintiff and agreed with him not to sell to anyone except his client or Sanders. The requested charge was defective in not containing such a limitation; there was no error in refusing it. Nor was there error in stating that Sanders' offer was for $485,000. A copy of the offer was in evidence, and the court correctly explained that $25,000 was to be turned back by the stockholders to provide a bonus for certain employees of the corporation.

■ Error is claimed because of the admission of defendant's exhibit A. This was the Bank's history sheet or diary of events relating to the William E. Barber Estate and the Hendrickson Trust, each of which owned shares of the stock in question. The entries were for the most part dictated by Mr. Lambrecht with some notations and entries by Mr. Allen. The exhibit covers the period from November 13, 1940 to March 21, 1941, but not every day has an entry. The plaintiff objected to its admission on the ground that it is a self-serving doucment not made in the regular course of business. The trial judge ruled that it was admissible under 28 U.S.C.A. § 695 as a writing or record made in the regular course of business. The plaintiff himself had introduced a part of exhibit A consisting of Mr. Lambrecht's entries for February 18, 1941. Where a part of a writing has been received in evidence as containing admissions, the party against whom it is offered may introduce the rest of the writing to explain or qualify the alleged admissions. Fleischman v. Toplitz, 134 N.Y. 349, 31 N.E. 1089; see Rouse v. Whited, 25 N.Y. 170, 82 Am.Dec. 337. Whether this principle would justify the admission of all the entries in exhibit A we need not stop to inquire, because we are disposed to agree with the ruling that it was admissible under the statute. The appellant urges that this ruling flies in the face of Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719, which excluded an accident report made by a railroad engineer pursuant to routine practice. But as the court there pointed out the phrase "regular course of business"

must find its meaning "in the inherent nature of the business in question and in the methods systematically employed for the conduct of a business as a business." We believe that the business of a corporate trustee justifies the establishment of a practice of keeping detailed records of day by day events affecting its trusts, and that records so kept are made "in the regular course of business." Compare cases admitting hospital records; Ulm v. Moore-McCormack Lines, 2 Cir., 115 F.2d 492, on rehearing 117 F.2d 222, certiorari denied 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525; Reed v. Order of United Commercial Travelers, 2 Cir., 123 F.2d 252; Meiselman v. Crown Heights Hospital, 285 N.Y. 389, 34 N.E.2d 367; Roberto v. Nielson, 288 N.Y. 581, 42 N.E.2d 27.

▇ Finally it is urged that the charge for stenographic minutes furnished to the judge was improperly allowed as costs. From the motion papers it appears that a transcript of the testimony at the two trials (there had been a former trial) was furnished to the judge by the reporter upon the order of the official court stenographer and was paid for by the Bank. There is no showing that the judge himself ordered the minutes, and the affidavit of Mr. Bobbé states, "Apparently they were furnished to the court merely because the defendants' counsel had ordered a transcript for their own use, and at the same time ordered an extra copy for convenience of the court." There is no denial of this statement. Rule 32 of the Civil Rules of the District Court for the Eastern District of New York provides:

"In the event the Court is to be furnished a transcript, the official stenographer shall furnish to him the original, and the stenographic cost of same shall be paid pro rata by each side to the action, such charge to be a taxable cost by the successful party against the unsuccessful party to the action."

We do not think the Rule should be so interpreted as to permit one party to order minutes for the judge without the consent of the other or without a request by the judge. See Hayes v. Surface Combustion Corp., D.C.S.D.N.Y., 25 F.Supp. 515, 516. The order denying the motion to retax costs is reversed and the cause remanded for their retaxing; in other respects the judgment is affirmed.