**CREEDON, Housing Expediter, v. LAMPADUSA et al.**

United States District Court
S. D. New York.

Dec. 10, 1948.

Sylvan D. Freeman, of New York City (J. Saul Brounstein, Litigation Atty, of Brooklyn, N. Y., of counsel), for Housing Expediter.

Levy, Galotta & Corcoran, of New York City (William J. Corcoran, of New York City, of counsel) for defendants.

MEDINA, District Judge.

In accordance with Section 205(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 925(a), the Housing Expediter brings this action to enforce compliance with Section 4(a) of the Act, 50 U.S.C.A.Appendix § 904(a), and the Rent Regulation for Housing in and for the New York City defense rental area which was in effect at the times material in this case. 32 Code Fed.Regs. § 1388.1281, 11 Fed.Reg. 4016 (1946), as amended. Injunctive relief only is sought; there is no prayer for the recovery of a money judgment.

Disregarding minor and unimportant details, the basic facts are not in substantial dispute. Prior to February 28, 1947 Dominick Maciocia was a month-to-month tenant occupying Apartment 34 in the prem-

ises known as 2082 Hughes Avenue, Bronx, New York City, owned by defendants or some of them. On February 28, 1947 there was a fire which evidently started in the Maciocia apartment and which rendered that apartment and others nearby quite uninhabitable. On that same day and on other later occasions conversations occurred between the parties, the substance of which was that Maciocia insisted that the apartment was still his and that he was entitled to return thereto as soon as the repairs had been completed, without the payment of any rent in the interval; whereas the position of the defendants was that he could not keep the apartment without paying the rent. I cannot find that either side receded from the position thus taken. Between March 1 and March 4 Maciocia removed his possessions from the apartment and on March 4 he turned over the key to the apartment and said "good-by." When the repairs had been completed, he sought to return but was excluded. During the pendency of this proceeding, by order of Judge Knox on July 11, 1947, defendants were required by preliminary injunction to restore the tenant to possession on payment of the rent for March and April of 1947. No provision was made in this order for the payment by the tenant of the rent for the subsequent months during which defendants had excluded the tenant.

Plaintiff contends that, wholly apart from the issue of surrender of the premises, he is entitled to a final injunction on the ground that the tenant's refusal to pay any rent was justified as no rent was due. This contention is based upon the theory that the rental fixed by the terms of the tenancy, which prior to the fire was in accordance with the Rent Regulation, was automatically reduced to zero when the premises became uninhabitable; or that, in any event, this Court should now order the reduction to be made nunc pro tunc as of the date of the fire.

■ For some unexplained reason no order appears to have been issued by the Administrator at any time directing a reduction in rent for this apartment because of the substantial deterioration in the accommodations. It seems to me that the Administrator had ample power under Section 5 of the Regulation, 32 Code Fed.Regs. § 1388.1281, 11 Fed.Reg. 4018 (1946), to issue an order to the effect that the maximum rent allowable during the period of repairs to the premises was zero dollars or some nominal amount.

■ An examination of the statute and the regulations on the one hand, and the adjudicated cases on the other, makes it abundantly plain to me that I have no power to reduce the rent nunc pro tunc nor to regard the rent as automatically reduced by the mere circumstance of the "substantial deterioration of the housing accommodations other than ordinary wear and tear since the date of order determining its maximum rent." 32 Code Fed.Regs. § 1388.1281, Sec. 5(c) (2), 11 Fed.Reg. 4120 (1946).

Substantially the same situation came before the Circuit Court of Appeals for the First Circuit in Elma Realty Co. v. Woods, 169 F.2d 172, 174. In that case also certain apartments were so damaged by fire as to render them unfit for human habitation. The Rent Director of the area concerned issued an order reducing the maximum rent for each of the accommodations to $1.00 per week. After the repairs had been made, but before the Rent Director had acted on a petition to restore the original maximum rent, the landlord received rents at the pre-fire rate from four of its former tenants who had returned. In affirming a judgment against the landlord for restitution of the alleged overcharges in rent and for double the amount of the alleged overcharges as statutory damages, the Court held: "The orders therefore applied to the apartments and required obedience not only during the period the apartments were under repair but thereafter until the orders were changed by the proper authority." See also Thierry v. Gilbert, 1 Cir., 1945, 147 F.2d 603; Absar Realty Co. v. Bowles, Em.App.1945, 149 F. 2d 654.

The point of this observation is that, in so far as concerns the federal law, the rentals payable are controlled by the Regulation for the rental area. Machinery is provided for administrative changes in this Regulation. In the absence of change they must prevail. Just as the tenant in the case

of Elma Realty Co. benefited, seemingly in unconscionable fashion, from the fortuitous circumstance that the proper official had not after the completion of the repairs increased the rental from $1.00 to the amount in force before the fire, so here, until such time as the Administrator reduced the rent, the tenant, in the absence of a surrender of the premises, remained liable for the maximum rental provided in the Regulation.

Doubtless the landlord in insisting upon the payment by the tenant of the full maximum rent provided by the Regulation at the time of the fire was taking the chance that the Administrator would later issue an order reducing this maximum rent as of the date of the fire. As provided in Sec. 5 (c) (2) of the Regulation, the Administrator had the power to do this "at any time" and "on his own initiative or on application of the tenant."

Nor is there anything to the contrary in Benenson Realty Corporation v. Porter, Em.App.1946, 158 F.2d 163. The violation there was not a mere oral insistence, as here, that the tenant was obligated to pay the maximum rent despite the change in circumstances. As stated in the opinion, 158 F.2d page 164:

"After complainant filed a report showing discontinuance of the services as above mentioned, the Area Rent Director, after proper notice to complainant, followed by further proceedings, entered an order decreasing the maximum rents for each of the 52 apartments, in amounts equivalent to 25% of the rents received on the Maximum Rent Date. This reduction was based upon a finding that 25% was the amount of decrease in rental value to which the apartments would have been subject, if the decrease in services had occurred on the Maximum Rent Date. These rental decreases were made effective as of the dates of the discontinuance of the services."

In the hurly-burly of rent regulation of large areas such odd situations as we find in this case are bound to arise. Fortunately, here, as appears from the discussion which follows, it seems unlikely that any injustice to Maciocia will ensue.

The question of surrender must be decided in accordance with New York law. While the Federal Rent Regulations are supreme in their field, Schwartz v. Trajer Realty Corporation, D.C.S.D.N.Y. 1944, 56 F.Supp. 930, it does not seem that they were intended to replace the corpus of state landlord and tenant law, except in so far as necessary to carry out federal policy. Section 227 of the New York Real Property Law, Consol.Laws, c. 50, provides:

"Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender. Any rent paid in advance or which may have accrued by the terms of a lease or any other hiring shall be adjusted to the date of such surrender."

Accordingly, if Maciocia surrendered his apartment after the fire, he ceased to be a tenant and the complaint herein must be dismissed. Fleischman v. Toplitz, 1892, 134 N.Y. 349, 31 N.E. 1089; Smith v. Kerr, 1888, 108 N.Y. 31, 15 N.E. 70, 2 Am.St. Rep. 362; Zimmer v. Diamond, 3d Dept. 1944, 268 App.Div. 539, 52 N.Y.S.2d 131.

If, on the other hand, the conversations and conduct of the parties amounted to something short of a surrender, he remained a tenant and liable to pay the amount of rent provided by the Rent Regulation. As the premises were uninhabitable, there is no significance in the fact that Maciocia removed such of his possessions as had not been entirely consumed or rendered valueless by the fire. His return of the key similarly lacks the significance which might have been attached to such an act under ordinary circumstances. It is evident that at no time did he entertain any intention to surrender the premises. While he emphatically protested that he would pay no rent while the premises

were uninhabitable, at the same time he insisted that he was entitled to the apartment and would not give it up.

A surrender under New York law necessarily involves contract principles, e. g., "a mutual agreement * * * that the lease terminates," which "may be inferred from the conduct of the parties," Bedford v. Terhune, 1864, 30 N.Y. 453, 463, 86 Am. Dec. 394; "an abandonment of the premises by the tenant" and "an acceptance thereof by the landlord as a surrender," Dagett v. Champney, 3d Dept. 1907, 122 App.Div. 254, 256, 106 N.Y.S. 892, 894; or "some act so inconsistent with the relation of landlord and tenant as to imply that [the parties] had both agreed to consider the surrender as made,—to yield up the estate." Continental Bank & Trust Co. of New York v. Goodner, App.Sup.Term 1st Dept. 1944, 49 N.Y.S.2d 747, 750. It is abundantly plain that the parties here were never in agreement.

By refusing to pay rent Maciocia may have been subject to eviction; but under the circumstances of this case I cannot find as matter of fact or law that he surrendered the premises.

Plaintiff is entitled to have the temporary injunction made permanent.

Submit findings and judgment in accordance with this opinion.