**F. A. R. LIQUIDATING CORPORA-
TION, Plaintiff,**

v.

**Herbert BROWNELL, Jr., Attorney Gen-
eral of the United States of America,
Successor to the Alien Property Cus-
todian, Defendant.**

Civ. A. No. 1462.

United States District Court
D. Delaware.

April 12, 1956.

C. Waggaman Berl, Jr. (of Berl Potter
& Anderson), Wilmington, Del., and Er-
nest S. Meyers (of Laporte & Meyers),
New York City, for plaintiff.

Dallas S. Townsend, Asst. Atty. Gen.,
James D. Hill, Robert J. Wieferich and
James H. Falloon, Washington, D. C.,
and Leonard G. Hagner, U. S. Atty., Wil-
mington, Del., for defendant.

LEAHY, Chief Judge.

The ultimate issue in this case is a
fact issue. The conceded point is wheth-
er plaintiff has met the requirement of
burden of proof. Defendant's case is
plaintiff has failed to meet such burden,
and cannot ask the court to substitute
assumptions or inferences from subsidi-
ary facts, absent any master facts to
support plaintiff's claim. At trial de-
fendant objected to the admissibility in
evidence of certain documents offered
by plaintiff. In order not to cut the con-
tinuity of the decision here, I shall dis-
cuss the evidence points in an Appendix
to follow this memorandum.

F. A. R. Liquidating Corporation
brought suit against the Attorney Gen-
eral of the United States, under § 9(a)
of the Trading with the Enemy Act, 40

Stat. 419, as amended, 50 U.S.C.A.Appendix, § 9(a), for return of 111 United States Patents which were allegedly vested by a predecessor of the Attorney General acting under the authority of that Act as the property of Fernseh, G. m. b. H., a German national.[1]

On cross-motions for summary judgment, I entered judgment in plaintiff's favor.[2] On appeal, the Court of Appeals agreed, except as to my finding as to the time when Fernseh's acceptance cable was sent from Germany. The Court stated there was a genuine issue of fact as to that issue which could not be resolved on a motion for summary judgment, and the cause was remanded to this court for trial on that issue.[3] After remand, defendant contended, here, that German law was applicable to the contract relied upon by plaintiff and defendant filed a motion for a separate trial of that issue. I denied defendant's motion. I concluded the only issue left to be tried on remand was as to the time when Fernseh's acceptance cable was sent from Germany.[4] Defendant then filed with the Court of Appeals a motion to recall and clarify the mandate of the appellate court. The Court of Appeals denied defendant's motion and repeated the only factual issue remaining for trial was whether the cable of acceptance from Fernseh to plaintiff was sent prior to 1:10 P.M. (E.S.T. Washington, D. C.) June 14, 1941, which was the effective time and date of Executive Order 8785.[5]

The two critical cables were sent by Fernseh on June 14, 1941.[6]

1. Defendant argues plaintiff's proof does not establish the time when the acceptance cable was filed in Germany and, since the time stamp placed on the face of that cable by Western Union in Fort Wayne, Indiana, purports to show the cable was *received* by plaintiff after the effective time of the Executive Order, this factor completely negatives all proof that the cable was *transmitted* by Fernseh in Germany prior to that time.

2. To support his contention defendant offered in evidence the two cables received by the Western Union office at Fort Wayne.[7] Both cables, dated June 14, were designated night letters by the sender, Fernseh, and as the expert witnesses for the parties testified, the night letter classification required these messages to be subordinated in transmission and processing in Germany to all higher rate messages carrying greater priority, such as Government messages, press messages, and straight messages, including local, European, and overseas messages, regardless of destination.[8] The acceptance cable bears a stamp impression placed thereon by the Western Union office in Fort Wayne, reading: "1941 Jun 15 AM 7 42". The power of attorney cable bears a time stamp placed thereon by the Fort Wayne Western Union Office reading: "1941 Jun 14 PM 2 01".[9] Fort Wayne and Washington, although in different time zones, were operating on the same time because Washington was operating on Eastern Standard Time and Fort Wayne was operating on Central Daylight Saving Time in June, 1941, but since Western Union operated on Standard time,[10] the time in Washington corresponding to 2:01 P.M. C.S.T. was 3:01 P.M. E.S.T.[11]

1. Vesting Orders 27 and 171, 7 F.R. 4269, 8510.

2. It is unnecessary to recite the narrative of the litigation. It is found in F. A. R. Liquidating Corp. v. McGranery, D.C. Del., 110 F.Supp. 580.

3. F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 209 F.2d 375.

4. D.C.Del., 130 F.Supp. 691.

5. 6 F.R. 2897, 12 U.S.C.A. § 95a note.

6. PX 1, 2.

7. DX 6 and 7.

8. Tr. (Nov. 17, 1955) p. 24 et seq., p. 27 et seq., and pp. 65–66.

9. DX 7.

10. DX 6 and DX 7 state: "The filing time shown in the date line on telegrams and day letters is Standard Time at point of origin. Time on receipt is Standard Time at point of destination."

11. In June, 1941, Standard Time in Berlin was six hours later than Eastern Standard Time. This means when it was

3 The testimony of plaintiff's expert witnesses supports the conclusion the power of attorney cable, being a night letter, was filed by Fernseh in the German cable office more than 1 hour and 51 minutes prior to its receipt at Fort Wayne, and hence was filed prior to the effective time of the Executive Order.[12] Moreover, the experts testified that censorship conditions in Germany delayed transmissions by the German telegraph office to the United States.[13]

The importance of the power of attorney cable and the time of its filing is clear from the statement by the Court of Appeals:

"Also on June 14th, Fernseh cabled authority to Mr. Martin (patent attorney and secretary of FAR) to execute the formal assignment on Fernseh's behalf. Fernseh would hardly have put such power in FAR's hands had it not regarded the contract as complete." [14]

This is simply the recognition that ordinary and prudent business conduct would not have permitted the filing of the power of attorney cable before the consummation of the transaction. Moreover, the text of the acceptance cable shows the acceptance cable was not dispatched later than the power of attorney cable. The acceptance cable states:

"We Authorize Mr. Martin As Our Representative By Separate Cable."[15]

I conclude the proof has substantial guaranty of trustworthiness that the two cables were prepared and transmitted simultaneously by Fernseh on June 14, 1941, because:

In a file memorandum dated June 19, 1941, Dr. Reichel refers to the "telegrams" as having already been drafted.[16] In a letter from Fernseh to Farnsworth dated June 16, 1941, Fernseh wrote that both cables were wired to Farnsworth on June 14, 1941, and in repeating them in the letter placed the acceptance cable first, before the power of attorney cable, thereby establishing the order of their chronology and importance.[17] Dr. Reichel refers to the two cables as bearing the same date, and without indicating they were not filed together.[18] In a memorandum prepared by defendant, it is stated "Under date of June 14, 1941, by a telegram transmitted at 7 a. m.,[19] the German corporation accepted the offer to abrogate these agreements. *In addition thereto*, Mr. Martin was designated as agent for the German corporation to do any acts necessary in order to carry out the terms of the agreement."[20] (Emphasis added.) In DX 4, a letter from Martin to Reichel, Martin leaves no doubt when the acceptance cable was received in the United States when he stated: "On June 14, 1941 when we received your cablegram of that date accepting our offer". Finally, the following statement in the Nicholas affidavit remains unchallenged: "On June 14, 1941, the very day

1:10 P.M. in Washington, it was 7:10 P.M. in Berlin Eastern Standard Time, and since Berlin was operating on Daylight Saving Time, it was actually 8:10 P.M. Thus, when it was 8:10 P.M. in Berlin, it was 1:10 P.M. in Fort Wayne, Indiana, C.D.S.T. and Washington, D.C., E.S.T., Tr. (Nov. 17, 1955) p. 6.

12. Tr. (Nov. 17, 1955) pp. 33, 69.

13. Tr. (Nov. 17, 1955) p. 29 et seq., and pp. 62, 69.

14. 3 Cir., 209 F.2d 375, 379.

15. Had the acceptance cable been filed after the power of attorney cable, the word *"authorize"* obviously would have been used in the past tense.

16. PX 9.

17. PX 8.

18. PX 11.

19. If this reference is to Washington Eastern Standard Time (which could be 2:00 P.M. German Daylight Saving Time), it corroborates the testimony of Dr. Reichel and Miss Rösler, infra. On the other hand, if it had reference to German D.S.T., Washington time would have been still earlier. In any event, both times would have been earlier than the effective time of the Executive Order.

20. PX 5.

that Fernseh sent and Farnsworth received the cable assignment and acceptance * * *." [21]

4. The contemporaneous proof is a rejection of the speculative theories and varied arguments (not factual evidence) advanced by defendant as to the time factor when the cables were sent.[22] As the Court of Appeals and this court have found, at all times the parties *inter sese* considered the transaction consummated on June 14, 1941.

5. All the facts and circumstances surrounding the dispatch of the cables lead to the conclusion the acceptance cable was filed by Fernseh in Germany prior to the effective time of the Executive Order, which was 8:10 o'clock Saturday evening, German D. S. T. The testimony of Reichel and Rösler bears this out. The answers to plaintiff's interrogatories and defendant's cross-interrogatories addressed to witnesses Dr. Wilhelm Reichel and Miss Ilse Rösler [23] show:

Reichel was head of Fernseh's Patent Department during the negotiations with plaintiff in 1941. Rösler was the senior secretary in the Patent Department and performed duties assigned to her by Reichel, who was her superior. Reichel left Fernseh in 1945 and Rösler is still in Fernseh's employ. Reichel prepared the cables which Rösler typed on dictation from Reichel. On Saturdays during the month of June, 1941, the working hours of Fernseh's office staff ceased between 1:00 P.M. and 2:00 P.M. (German D. S. T.) (which was between 6:00 A.M. and 7:00 A.M., June 14, Washington, E. S. T.). To the best of Dr. Reichel's recollection (his testimony bears trustworthiness), no exception was made on June 14, 1941, a Saturday, and Rösler usually stopped working at 2:00 P.M. (German D. S. T.). To the best of her recollection the employees connected with the preparation and dispatch of cables in 1941 usually did not work overtime (same observation as to her testimony). I conclude the cables were transmitted to the cable office by the office staff on June 14, 1941, during working hours.[24]

The statements [25] solicited by defendant from Fernseh's Technical Manager, Dr. Rolf Moeller, corroborate the testimony of Reichel and Rösler. Moeller (whose initials appear on PX 1 and PX 2) informed defendant that

"On the assumption that June 14, 1941 was a Saturday, the two telegrams to Farnsworth have been in all probability delivered to the Post [Telegraph] Office not later than 2:00 P.M. This is because the Saturday Office closing was at 1:00 P.M. and the Patent Department, which sent the telegrams, in all probability at that period made no over-hours * * *.

"Since, however, as follows from a file memorandum which was rediscovered and of which I attach a copy, I had already on June 13, 1941 re-

---

21. R. 27a. This designation is to the pages of the record on appeal, a copy of which was handed up to this court on the trial.

22. Defendant emphasizes the difference of 17 hours in the Western Union time stamps on DX 6 and DX 7. An explanation for this is found in the testimony of the experts, (Tr. (Nov. 17, 1955) pp. 26, 28–30, 40, 47, 61–62, 65, 66, 69.) The messages, after filing, were first censored and thence subordinated to other messages for transmittal within and from Germany, and when received first in New York from Germany, they were routed from New York to Fort Wayne through Indianapolis and Chicago, respectively. Plaintiff's expert witness testified: It is not an uncommon occurrence for two messages starting out simultaneously to arrive at the same destination considerable times apart, (Id., p. 31 et seq.) Moreover, plaintiff's expert testified DX 7 was telephoned to the addressee whereas DX 6 was delivered, (Id., pp. 34–35.).

23. PX 3 and DX 1; PX 4 and DX 2.

24. On cross-examination, plaintiff's expert witness testified that in his opinion the cables were filed by Fernseh "not later than one o'clock German time", (Tr. (Nov. 17, 1955) p. 49.).

25. PX 6 and PX 7.

ceived authorization by telephone to cancel the agreements with Farnsworth, the two said telegrams were probably already delivered in the morning of June 14, 1941 * * *."[26]

Moreover, Moeller explained the reasons why the cables were dispatched by Fernseh on the *morning* of June 14, 1941:

"It was rather the intention to send the cables to the USA without delay, since it was embarrassing to me to leave the Farnsworth Company so long without the promised answer, for we had telegraphed them already about ten days previously that we would send them the promised answer in a few days."[27]

6. No question but that Fernseh received the sought approval from the German Government on June 13, 1941, to complete the transaction with Farnsworth.[28] It is also undisputed Fernseh had promised Farnsworth a prompt reply.[29] Delay in filing the cable by withholding filing, until after office hours, as defendant suggests, would have been inconsistent with the attitude frequently expressed by Fernseh to file the cables and notify Farnsworth as quickly as possible. In fact, the cables were in readiness as early as May 19, 1941.[30]

Moreover, there is the testimony of Reichel (Fernseh) and Rösler (Fernseh) the cables were dispatched during working hours which ended not later than 2:00 P.M. German D. S. T.; the uncontradicted statements of Martin (plaintiff) and Nicholas (plaintiff) the cables were received on the day they were dispatched; and the admission by Murphy (defendant) the cables were transmitted at 7:00 A.M. on June 14 (well within the effective time of the Executive Order whether he meant 7:00 A.M. German D.

S. T. or Fort Wayne or Washington Standard Time).

All these are undisputed facts. They compel the conclusion the acceptance cable was sent by Fernseh without delay on the morning of June 14, 1941, or at the latest by the close of Fernseh's business on June 14, 1941, which was 2:00 P.M. German Daylight Saving Time, or 7:00 A.M. Washington Eastern Standard Time. Hence the cable filing was prior to the effective time of the Executive Order.

■ 7. True, in this case there is some circumstantial evidence. But circumstantial evidence has probative value equal to that of direct evidence. Lukon v. Pennsylvania R. Co., 3 Cir., 131 F.2d 327; United States v. Valenti, 2 Cir., 134 F.2d 362. As Wigmore says in Science of Judicial Proof, 3d Ed., page 794:

"*Some* circumstantial evidence is more valuable and convincing than *some* testimonial evidence, * * *."

In the case at bar there is no reason to give plaintiff's evidence any less weight because it may be characterized (as it is by defendant) as circumstantial. Regardless of where the burden of proof may ultimately fall, plaintiff has established a *prima facie* case by placing facts in evidence which, if unanswered (and they are unanswered), would justify men of ordinary reason and fairness in affirming plaintiff's position.[31]

■ In the law of evidence it has been accepted as a truism that all evidence must involve an inference from some fact for the proposition to be proved.[32] It is often difficult to prove an ultimate or master fact without basing one inference upon another. There is the misguided view that an inference can only be made from facts proven,

26. PX 6.

27. PX 7.

28. PX 7, PX 9, PX 10.

29. PX 7, PX 9.

30. PX 9.

31. See 9 Wigmore on Evidence, 3d Ed., p. 299.

32. See Id., p. 398.

i. e., that an inference upon an inference will not be permitted. This view has been rejected. Thus, Wigmore, supra, p. 436, in looking at the fallacy, states:

"The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon."

 Thus, inference based on a fact established by direct or by circumstantial evidence, or an inference based on that inference is permissible. In any event, the inference need only be a *probable* inference. There is no requirement in a civil equity case a plaintiff must rebut every conceivable *possible* inconsistent inference. A plaintiff need not exclude every other reasonable hypothesis which might be inferred from its proof, as the U. S. Attorney has to do in a criminal case. "In civil cases the extreme caution and the unusual positiveness of persuasion required in criminal cases do not obtain." [33] The laws of logic as applied to evidence recognize the distinction between a possibility and a probability.[34]

8. Defendant did not offer any proof of the cables were sent *subsequent* to the effective time of the Executive Order. In fact, defendant's answers to plaintiff's interrogatories show defendant has no information that either cable was dispatched by Fernseh subsequent to the effective time of the Executive Order.[35] The testimony of defendant's expert witness was also negative.[36]

9. As far as the record before me is concerned, I find no evidence the acceptance cable was dispatched *after* the effective time of the Executive Order.

Thus, against plaintiff's uncontradicted proof, defendant offered—nothing. In fact, upon inquiry on my part defendant admitted "I don't know, as a matter of fact, who would have the burden of proof" as to establishing the time when the acceptance cable was filed in Germany.[37] And upon further inquiry, defendant stated that, as to the burden of proof, "There is absolutely no authority" on the question presented here.[38]

 The preponderance of uncontroverted evidence (although in some portions circumstantial it may be) establishes that Fernseh's acceptance cable was sent prior to the effective time of the Executive Order and I find Fernseh's acceptance cable of June 14, 1941, was filed, dispatched, and transmitted by Fernseh prior to the time Executive Order 8785 became effective.

A decree should be entered in plaintiff's favor.

## APPENDIX

 The Reichel and Moeller file notes are admissible. They were made in the regular course of business and are designated "File Note".[1] The writings were memorialized within a few days of the cables of June 14. 28 U.S.C.A. § 1732 provides that any writing "made as a memorandum or record of any act, transaction, occurrence, or event," is admissible if "made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." The statute further provides that "All other circumstances of the making of such writing or record, including lack of per-

---

33. 2 Wigmore, supra, p. 325.

34. Wigmore, Science of Judicial Proof, 3d Ed., pp. 237–238.

35. PX 13, Nos. 1, 2, and 3.
 In the argument before the Court of Appeals, counsel for defendant, in referring to the acceptance cable, stated: "We know it was sent on June 14th, but we don't know what time. It was a nightletter." (CA p. 10.)

36. Tr. (Feb. 12, 1953), pp. 36–37.

37. Tr. (Feb. 12, 1953) pp. 36–37.

38. Tr. p. 37.

1. PX 9 and 10.

sonal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." [2]

■ The Murphy memorandum [3] was prepared by defendant's predecessor in the regular course of business. In fact, it was introduced, in the case at bar, by the present defendant. There can be no question of privilege based on work-product with respect to this item because defendant voluntarily produced and offered the Murphy memorandum.

Plaintiff objected to DX 3 and 3A. This is a letter dated June 14, 1941, to Fernseh from Dr. Landfried of the German Ministry of Economics. Defendant argues this letter contains the German Government's approval of the transaction between plaintiff and Fernseh. As it is dated June 14, 1941, it is said Fernseh could not have sent its acceptance cable until after it was received, either on or after June 14, 1941. This contention is without merit. No question but that the cables were sent on June 14, 1941, and the German Government's approval of the transaction was telephoned to Fernseh on June 13, 1941. The letter, if it has any relevancy, simply confirmed in writing the former approval of the German Government.

---

2. See United States v. United Shoe Machinery Corp., D.C.Mass., 89 F.Supp. 349, 354. There, Judge Wyzanski said: "* * * a regularly preserved file of business instructions, business reports of action taken pursuant to those instructions and business suggestions for future conduct, are also the type of writing contemplated by the statute." As to admissibility, he also said the factors to be considered are: 1. "contemporary explanations of ambiguous conduct, and motive"; 2. "the truth of any event of which the communicating employee had personal knowledge and which occurred within a reasonable time before he wrote"; and 3. "the truth of any event of which the communicating employee was informed, * * * who had personal knowledge of it and of which the communicating employee had made a record within one year of the event."

Accord: Pollack v. Metropolitan Life Ins. Co., 3 Cir., 138 F.2d 123; Waters v. Kings County Trust Co., 2 Cir., 144 F.2d 680; United States v. Moran, 2 Cir., 151 F.2d 661, 167 A.L.R. 403; Finnegan v. United States, 8 Cir., 204 F.2d 105.

